CASE 62—PETITION EQUITY—DECEMBER 13.

# J. Knefler v. C. U. Shreve.
# Wm. Kendrick v. Same.
# S. L. Nock's ex'r v. Same.
# Sallie B. Shreve v. C. U. Shreve's Trustee.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. Under a devise of real estate to a trustee, with directions to pay over to the *cestui que trust* the rents as they fall due, such rents are liable in the hands of the trustee for the payment of the debts of the *cestui que trust*.

2. A trust will not be implied except where it is shown that the testator intended to create it where he points to the objects, the property, and the way it shall go.

3. A deed of assignment for the benefit of creditors which conveys all the real, personal, and "mixed" property of the debtor, and purports to give a schedule thereof, followed by the clause, "and any and all other property not exempt from execution which by oversight may have been omitted in the foregoing list," is held to pass to the assignee the income of property held in trust for the benefit of the debtor, although it is not mentioned in the schedule.

O. A. WEHLE FOR APPELLANT, JOSEPH KNEFLER.

1. The words of T. T. Shreve's will raise no trust in favor of C. U. Shreve's family. Words only assigning the motive or reason for a devise create no trust. (Benson v. Wittam, 5 Sim., 22; Thorp v. Owen, 2 Hare, 611.)

2. In cases of devises to parents, in which the children are mentioned, the tendency is to find an absolute interest in parents. (Crockett v. Crockett, 1 Hare, 451; Byne v. Blackburn, 26 Beav., 41; Webb v. Wools, 2 Sim. (N. S.), 267; Fox v. Fox, 27 Beav., 301; Lambs v. Eames, L. R. Eq., C. X., 267; Curtis v. Risson, 5 Madd., 434; Macnab v. Whitbread, 17 Beav., 299.)

3. In all English cases in which a trust was declared in favor of children, the words were clearly imperative. (Blakeney v. Blakeney, 6 Sim., 52; Wetherell v. Wilson, 1 Ken., 86; Jubber v. Jubber, 9 Sim., 504; Ford v. Fowler, 3 Beav., 146; Dewitte v. Dewitte, 11 Sim., 41; Woods v. Woods, 1 My. & C., 401; Gilbert v. Bennett, 10 Sim., 37; Raikes v. Ward, 1 Hare, 445.)

4. The American cases are averse to implied trusts in favor of children,. and give parents absolute estates where English courts would declare· trusts. (Wallace v. Dold, 3 Leigh.; Harrison v. Harrison, 2 Gratt., 1; Rhett v. Mason's ex'r, 18 Gratt., 541; Spooner v. Lovejoy, 108· Mass., 529.)

5. C. U. Shreve's interest is liable to be assigned by him or subjected to· his debts. At *common law* property given can only be kept from donee s creditors by limitations over. (Brandon v. Robinson, 18· Ves., 429; Graves v. Dolphin, 1 Sim., 66; Piercy v. Roberts, 1 My. & K., 4; Wallace v. Anderson, 16 Beav., 533; Hallett v. Thompson, 5 Paige, 583; Bryan v. Knickerbocker, 1 Barb. Chy. R., 409; Til-· linghast v. Bradford, 5 R. I., 205. Kentucky cases: Eastland v. Jor-· dan, 3 Bibb., 186; Samuel v. Ellis, 12 B. M., 481; Samuel v. Salter, 3 Met., 263.)

6. The life estate of C. U. Shreve did not pass by any of the sweeping· clauses in the deed of assignment    Sweeping clauses in assignments. are restricted by specific description in the deed. (Burrell on Assign-· ments, p. 354; Scott v. Coleman, 5 Littell, 353; Mims v. Armstrong, 31 Md., 87.)

7. Estates held in active trust like C. U. Shreve's life estate cannot be· subjected to debts by *fieri facias*. (Coults v. Walker, 2 Leigh., 275;. Briscoe v. Anderson, 12 Bush, 344; Strode v. Churchill, 2 Littell,. 75; Flournoy v. Johnson, 7 B. M., 693; Blanchard v. Taylor, 7 B.. M., 648.)

BARRET & BROWN FOR APPELLANTS, KENDRICK & SON.

1. The courts are not inclined to constrain construction to build up trusts· by implication. (Benson v. Whittam, 5 Sim., 22; Thorp v. Owen, 2 Hare, 607; Byne v. Blackburn, 26 Beavan, 41; Webb v. Wools, 2. Sim. (N. S.), 267; Fox v. Fox, 27 Beavan, 301; Lambs v. Eames,. Law Rep., X. Eq. Cases, 267; Macnab v. Whitbread. 17 Beavan,. 299.)

2. In deeds of assignment the list or schedule always controls. (Burrell' on Assignments, sec. 136 )

3. The rule in cases of ambiguous deeds is to ascertain the motive and intent of the grantor. (Pearson v. Rice, 8 Bing., 178; Thompson. v. Thompson, 2 B. Mon., 161 )

4. An enlarging clause in a deed of assignment can only be applied as; pointing out property of the same kind as to title as that enumerated in the list embodied in the deed. (Moore v. Magrath, Cowper, p. 11; U. S. v. Arredondo, 6 Peters, 740; Mims v. Armstrong, 31 Md., 87; Rundlett v. Dole, 10 N. H., 461; Beard v. Kimball, 11 N. H., 471.)

5. A trust estate may be subjected to the debts of the *cestui que trust.* (Pope v. Elliott, 8 B. Mon., 86; Samuel, &c., v. Ellis, 12 B. Mon.,. 479; Carlin v. Carlin, 8 Bush, 142; Samuel v. Salter, 3 Met., 259.)

6. Lands held by equitable title are subject to lien and sale under execu-tion. (Eastland v. Jordan, 3 Bibb, 187; Jones v. Langhorne, 3 Bibb, 455; Strode v. Churchill, 2 Littell, 79; Blanchard v. Taylor, 7 B M., 648; Samuel, &c., v. Salter, 3 Met., 260; Anderson v. Briscoe, MS. Opin., 6th October, 1876.)

7. An execution levied prior to a writ of attachment gives to the execu-tion creditor a prior lien.

JOHN C. SPENCER AND JOHN ROBERTS FOR APPELLANTS, NOCK'S EXECUTORS.

1. Trust estates are subject to the payment of the debts of the *cestui que trust*. (Pope's ex'rs v. Elliott, 8 B. M., 56; Samuels, &c., v. Elliott, 12 B. M., 480.)

2. Trust estates can be subjected only in equity, and are not liable to levy and sale under execution. (McIlvane v. Smith, 42 Mo., 45; Bongart v. Perry, Johnson's Chancery, 55; Eastland v. Jordan, 3 Bibb, 186.)

3. The wife and children of C. U. Shreve have no right to any part of his equitable life interest.

4. In deeds of assignment the schedule must govern as to what passes. under the deed. (Scott, &c., v. Coleman, 5 Littell, 353.)

JAMES S. PIRTLE FOR APPELLANTS, SALLIE B. SHREVE, &c.

The intention of the testator was to give to the family of C. U. Shreve a maintenance out of the income of the trust estate, and there is no reason why that intention should not be carried out. (Cosby v. Fer-guson, 3 J. J. Mar., 264; Flournoy v. Johnson, 7 B. Mon., 693; Col-lins v. Carlisle, 7 B. M., 13; Henderson v. Haynes, 2 Met., 349; Pope's ex'rs v. Elliott, 8 B. Mon., 59; Warner v. Bates, 98 Mass., 274.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

T. T. Shreve, by his last will and testament, devised to his children a large estate, and by its provisions, after mak-ing certain specific devises, placed one half of the share de-vised to each child under the control of a trustee, with the direction to those dividing his estate to so allot one half of each share as to make it income-paying real estate. This half share, or rather the income to be derived from it, was de-vised to each child for life, remainder to his or her children, the rent to be paid by the trustee to the life tenant quarterly, after paying taxes, insurance, and keeping the property in

repair.   C. U. Shreve, one of the children, meeting with heavy pecuniary losses, made a conveyance of his estate to a trustee for the benefit of creditors.   After this transfer was made, some of his creditors attached the income on the half share devised to him, on the ground that it was not embraced in the conveyance made for the benefit of his creditors.

Other creditors of C. U. Shreve had executions levied on this estate in the hands of the trustee and sold for their debts.

The widow and children of C. U. Shreve came into the case, alleging that, under the provisions of the will of T. T. Shreve, the income of that portion of the estate held by the trustee was for their benefit as well as that of the husband and father, and could not, to the extent of their interest, be subjected to the payment of his debts.   The assignee or trustee of C. U. Shreve claims that the entire income passed to him under the conveyance made for creditors.

The nature and extent of the interest derived by the children of C. U. Shreve under the will of their grandfather, is the principal question in the case, and will be first considered. It is only necessary to notice the provisions of the will bearing on this question.

Clause 9th.  "After the foregoing special devises, I wish all of my estate, of every character and description, real, personal, and mixed, of which I may die possessed, to be divided into five equal parts, having due regard to kind, quality, and income-bearing, apportioning to each share its fair proportion to each kind."

"10th.  After said division shall have been made, I will that two fifths of same be alloted to my two children, Charles U. Shreve and Mary E. Goodloe, one fifth to each, subject to such conditions as hereinafter named.

"11th. The remaining three fifths of said division I will to my wife, Belle Sheridan Shreve, and to her three children, Mattie Belle, Thomas William, and Adele Lawrence Shreve, one fourth to each, also subject to such conditions and restrictions as are herewith named.

"12th. As soon after my death as it can be conveniently done, I wish my executor, hereinafter named, after first setting apart a fund sufficient to pay the above-named special devises and incidental expenses, to make out a full and complete list and schedule of all my estate, of every character and description, real, personal, and mixed, in the state of Kentucky and elsewhere, and hand the same to the following named persons, to-wit: James H. Henning, A. C. Rodgers, and A. Harris, who, or any two of whom, I desire to proceed to value it, and divide it into five equal shares, upon the principle hereinbefore indicated. One half of each share (which half I wish to become paying real estate) I desire to be set apart and conveyed to a trustee, to be held for *the use and benefit of each child* during his or her life, and then to descend to his or her heirs, without any power or right on the part of said child to encumber said estate or anticipate the rents thereof; but said trustee shall collect said rents, and after paying taxes, insurance, and keeping the property in repair, pay the *rent to the child in person* quarterly, or as the money may be collected, according to the terms of the lease. The other half of such share I wish conveyed to each child in fee, to do with as he or she may please. In placing these restrictions on one half the estate I give my children, I do not wish it understood that I distrust their capacity to manage their own affairs, for I do not; but I believe that one half of a share that each will receive will afford ample means to commence and conduct a respectable

business; and as the other half will give them a *comfortable living* in the event they should be unfortunate in business or otherwise, and now having it in my power, *it is my pleasure, and I believe it my duty*, to shield and protect them *against casualties and accident as far as possible.*"

After directing the manner in which the trustees shall be appointed, &c., the testator proceeds: "It is true, I give to my two oldest children rather more than I give to my younger children; but my reason for doing so is, *they are grown, and having families of their own, their present necessities are much greater;* and if the interests of my younger children are reasonably well looked after, and properly cared for after supporting, clothing, and educating them, their shares will be much larger than the two other children by the time they become of age," &c.

That it was the intention of the testator to place the income from the one half share devised to a trustee for the benefit of his son, C. U. Shreve, beyond the reach of the latter's creditors, will scarcely admit of controversy, and that the widow and children of C. U. Shreve acquired no beneficial interest in it is equally certain. The motive influencing the devisor to give to the children by his first wife more than the children of his last wife can raise no implied trust in favor of those who are not even mentioned in the will, nor will the placing of one half the estate devised to C. U. Shreve in the hands of a trustee imply a purpose on the part of the testator to vest the children of his son with a beneficial interest. The testator gives to his son an estate in fee in one half of the share devised, and as to the other half, he gives him the annual income for life, remainder to his children, with the direction to the trustee, *after paying taxes, insurance*, and the expense of keeping the devised property

in repair, *to pay the rent to the child in person.*  There is a devise of one half a share in fee to C. U. Shreve, and in the remaining half there is a devise to him of the net income, without any restriction or qualification, except the one requiring the estate to be controlled by a trustee, to be by him rented out, taxes paid, and kept in repair, &c.   The reason the testator gives for placing this half share in the hands of a trustee is not a want of confidence in his son, *but his desire to shield and protect him from want in the event of his losing the estate* over which, by the will, he had the absolute control.   He was evidently impressed with the idea that a devise to a trustee would accomplish this purpose, and, in order to make it the more secure, he denied to his son the right to encumber the estate *or to anticipate the rents.*   It never occurred to the testator that the absolute right to the rents of this real estate, as they became due, vested in the son, and that the latter would not be permitted to receive and enjoy this income to the exclusion of the rights of creditors; in fact, the draftsman had conceived the idea that to place the property in the hands of the trustee, and deny the devisee the right to use or control it, would of itself save it from creditors on the happening of the event attempted to be provided against by the testator.   It was never intended to vest in the children of C. U. Shreve any other estate, legal or equitable, in this half share than the estate in remainder, and for no other reason than that the devisor thought it was fully secured to his son by the intervention of a trustee.

The testator felt that he had provided for his son a *comfortable living,* as he expresses it in the will, when he devised this estate or the control of it to a trustee, and the words *comfortable living* have as much application to the children who were without children and unmarried as

to his adult children with families.   He was looking alone
to his children and their future comfort and maintenance,
and not to his grandchildren.

It appears that the testator had given the children of his
first wife more of his estate than to his younger children,
and in assigning a reason for being more liberal to the former,
he says: "But my reason *for doing so is, that they are grown,
and, having families of their own, their present necessities are
much greater.*"    From this language, connected with the
provisions of the will already alluded to, it is argued that
a trust must be implied in behalf of the appellants.    If a
mere motive influencing the action of the devisor in making
the gift, or the reasons assigned solely for the purpose of con-
vincing the children of the testator that he has not only been
liberal, but just in the disposition of his estate, is to be seized
on by the chancellor as creating an implied trust in a case
like this, it would so enlarge the rule in the construction
of wills as to divest the beneficial use of the gift without
regard to the plain intention of the testator.    The wis-
dom and policy of the doctrine creating implied trusts has
always been questioned, and while we do not recognize the
rule of construction as impolitic or unwise, it should never
be enlarged in its application to relieve the hardship of a
particular case.    The true rule is the intention of the testa-
tor, to be ascertained from the whole context of the will.
This intention must govern, and no trust will be implied
where no such intention appears.

There is no difficulty in arriving at the testator's purpose
in this case.    His sole object seems to have been to secure
this income to his son as against any creditor he might have,
and failing in this, the chancellor will not imply a trust for
the children in order to secure the estate to the father.    The

testator has in no manner attempted to control the disposition of the income by his son, or expressed even a wish or desire that he should apply any part of it to the support and maintenance of his family. If he had assigned as a reason for giving this son more than his other children that he was poor and they had received, or were the owners of, other property than that devised, the same argument might be used when connecting such language with the other provisions of the will in favor of an implied trust. The appellants are not mentioned as the objects of the trust; the devise is alone to their father, except the estate in remainder, and no beneficial use of the property can be adjudged to them by the chancellor. The facts of this case show an attempt to secure this property to the son as against the claims of creditors; and the donor believing, no doubt, that a mere declaration on his part, that the property devised was not to be liable for his son's debts, would fully execute his purpose, has failed in his effort to secure it. If there had been no insolvency, and the children had instituted this action against the father, asking an application of the income for their support, the chancellor would not have hesitated in dismissing the petition. They are not named, expressly or by implication, as the objects of any trust. The extent of their interest is nowhere defined, and no obligation imposed on the father or trustee, by any provision of the will, to apply the rentals of the realty to their use. "No trust is implied when the words simply state the motives leading to the gift." (Perry on Trusts, page 93.) Lord Alvany states the rule to be, "that a trust will be implied only where the testator points out the ob-

jects, the property, and the way it shall go." (2 Ves., p. 335.)

Yet, in Hill on Trustees, page 73, fourth American edition, we find the following rule:

"Precatory words will not be construed to confer an absolute gift on the first taker merely because of failure or uncertainty in the object or subject of the devise."

It is difficult to lay down any rule applicable to the doctrine of implied trusts. "Every case," says Perry, "must depend upon the construction of the particular will under consideration;" and in carefully considering the various provisions of the will before us, we are satisfied the testator never intended to impose an obligation on his son to apply any part of the income from this real estate to the support of his family. While the trustee must hold and control this property, after paying the insurance, taxes, and keeping the property in repair, he may be required to pay over the net income to creditors as the rent falls due.

The income of the estate, as it becomes due, being liable in the hands of the trustee for the payment of debts, the remaining question to be determined is, does the conveyance to J. M. Shreve by C. U. Shreve of his estate, for the benefit of creditors, embrace by its terms the income of this trust property? and if answered in the affirmative, it becomes unnecessary to determine the questions raised between the attachment and execution creditors. The grantor, C. U. Shreve, sells, conveys, and transfers unto the party of the second part, J. M. Shreve, "*all the real, personal, and mixed property owned by the said party of the first* part not exempt from execution, and which is as follows," &c. The grantor then proceeds to designate the property that he has granted and transferred to J. M. Shreve, the trustee, including lands,

stock, choses in action, &c., and if there was nothing else in the deed showing a purpose and in fact a transfer of other property, there would be but little difficulty in ruling the question raised in this case against the assignee or the general creditors; but the grantor proceeds to direct the assignee to sell all the *foregoing* property belonging to said first party, *" and any and all other property belonging to said first party not exempt from execution, which by oversight may have been omitted in the foregoing list, so far as may be done,"* &c. After directing the application of the moneys received from a sale of the property to the payment of his debts, the grantor concludes:

"If, after all the debts shall have been paid, there shall be any property unsold or any money on hand, said money and property shall be returned by said trustee to said party of the first part; it being the object and intent of this conveyance to transfer to said second party *all the property belonging to said party not exempt from execution for the benefit of all the creditors of the first party,"* &c.

It is evident that the property conveyed by this deed is not limited or restricted to the property specifically described. The grantor undertakes, in the first place, to sell *all of his property, real, personal,* and mixed, and then produces a list of the property he claims to own, and, for fear he has omitted to convey or transfer property owned by him and not mentioned in the list, he directs his trustee to sell any property owned by him that may have been omitted, it being his purpose *to transfer and convey* all of his property not exempt from execution for the benefit of creditors.

These last explanatory clauses but give the meaning to the granting clause of the deed, showing clearly that when the grantor used the *words sell and convey all my property,*

*real, personal, and mixed,* he intended to convey, and was.
conveying, all the property he owned, although a list had,
been made which he supposed embraced his entire estate.
That the list or schedule given of the property conveyed.
must control, unless there is something else in the convey-
ance showing a different intention, is conceded.   But when
the testator says I mean not only to convey what is on the
list, but all other property owned by me, such as may have
been omitted, it seems to us, makes the question too plain
for discussion, and leaves no doubt but that the grantor's.
whole estate is embraced by the deed.   It may be that the
grantor supposed this income from the realty formed no part
of the estate, yet it is evident his object was to pass *all* of
his estate to the assignee.   That such was his purpose there
can be no doubt, and when the effect of the conveyance is.
to distribute the proceeds of his property equally between
his creditors, the chancellor would be reluctant to give the-
language of the conveyance any other construction.   He·
had conveyed land, chattels, stocks, choses in action, and all.
of his estate, for the purpose of making an equitable distri-
bution of his assets between his creditors, and the chancellor,
instead of defeating this purpose, should delight in aiding
him to accomplish it.   It results from the conclusion reached
that the creditors who are appealing have only a beneficial
interest under the conveyance.

The judgment on each appeal is affirmed.