## M. L. HARMAN ET AL. v. J. S. HOSKINS ET AL.

1. FRAUDULENT INSTRUMENTS. *When the intent a conclusion of law.*
   Where, upon the inspection of a written instrument, it appears that the natural and necessary consequence of its provisions is to delay, hinder, or defraud creditors, the maker thereof or grantor therein will be held to have intended to accomplish the effect which must necessarily result therefrom, and the court will declare such instrument to be fraudulent as to the creditors, though the maker or grantor may not have really intended any fraud in its execution.

2. FRAUDULENT CONVEYANCE. *Property to be acquired, and remain in possession of grantor. Case in judgment.*
   On the 22d of March, 1877, H., a merchant, gave his note. to W. for $8,764.91, for past indebtedness, due in the years 1873, 1874, and 1876, the payment of which was extended, by acceptance of the note, to the 22d of March, 1880, and on the same day executed a deed of trust to secure this note, and also $20,000, to be advanced by W. to H. during the years 1877 and 1878, to enable the latter to buy goods and general merchandise for his business. The property embraced in the deed of trust consisted of several tracts of land; all the stock of merchandise, of whatever kind, owned by H., and in his store at G.; all the liens, mortgages, notes, accounts, and evidences of debt, of every kind, then owing to him; all the goods he might thereafter acquire and place in his store; and, also, each and every debt, of all kinds and descriptions, that might accrue to him before the maturity of the note, in 1880. It was stipulated in the deed that H. might continue in possession of the lands, goods, choses in action, etc., under the direction of the trustee, till he should take possession of them. The conditions were, that if H. should promptly pay his indebtedness, the deed should be void; but if he should fraudulently dispose of any of the property, or should fail to pay the indebtedness when due, then the trustee should take the property into his possession and sell it. *Held*, that this deed of trust is, upon its face, fraudulent and void as to the creditors of H.

3. SAME.- *Future acquisitions. Mortgagor remaining in possession.*
   It is a general rule that, where a mortgage covers an entire stock of goods on hand, and all goods that may be bought and put in the store from the time of the execution of the mortgage till the debt secured shall become due, and the mortgagor is allowed to remain in possession of the goods, selling, and making purchases to replenish his stock, in the usual course of business, it is fraudulent as to creditors affected thereby.

APPEAL from the Chancery Court of Holmes County.

Hon. R. W. WILLIAMSON, Chancellor.

M. L. Harman gave a deed of trust to C. V. Gwin as trustee, to secure an alleged indebtedness to J. W. White. The Southern Express Company recovered a judgment against Harman,

and had an execution levied on a part of the property embraced in the deed of trust. Harman, the debtor, Gwin, the trustee, and White, the *cestui que trust*, obtained an injunction against the sale of the property. Upon motion of the judgment-creditor, the injunction was dissolved, and from the decree of dissolution this appeal was prosecuted. A description of the property embraced in the deed of trust, and the conditions of the deed, are set forth in the opinion of the court.

*R. A. Anderson*, for the appellants.

1. The retention, by the grantor, of personal property mortgaged is no evidence of fraud. 12 Smed. & M. 369 ; 4 Smed. & M. 229, 302.

2. Fraud, or no fraud, is a question of fact, and must be proven. 10 Smed. & M. 130 ; 11 Smed. & M. 541 ; 13 Smed. & M. 83.

3. Assignments can be made for future advances. 9 Smed. & M. 394 ; 4 Kent's Comm. (4th ed.) 175, 176 ; Burrill on Assign. 76.

4. A preference can be made for future advances and responsibilities, as well as for existing claims, where there is no reason to doubt the fairness of the transaction. 2 Johns. Ch. 283 ; 11 Wend. 240.

5. Under an assignment, arrangements can be made to continue and carry on the assignor's business. Burrill on Assign. 196 ; 12 Pick. 451 ; 5 Ala. 297 ; 11 Wend. 240 ; 20 Wend. 507.

6. The express company, which is in fact the judgment creditor, was never misled by this assignment, and had no judgment-lien at the time it was made. 34 Miss. 708. An insolvent debtor has a right to prefer one creditor to another, and no attachment or after-acquired lien will avoid the assignment. 8 Wheat. 268. Also, upon the subject of preference, see 1 Smed. & M. 541 ; 12 Smed. & M. 22 ; 34 Miss. 655 ; 38 Miss. 354.

*Whitfield & Young*, for the appellee.

1. The plaintiff in execution clearly had the right to have the equity of redemption in the goods levied upon sold under its execution. Rev. Code 1871, sect. 2295 ; *Butler* v. *Lee*, 54 Miss. 476.

2. The bill shows that the deed of trust is fraudulent *per se*. *Summers* v. *Branin*, 42 Miss. 749 ; 46 Miss. 310 ; *Farmers' Bank* v. *Douglass*, 11 Smed. & M. 469 ; *Ewing* v. *Cargill*, 13 Smed. & M. 79 ; *Sumerville* v. *Harlan*, 4 Yerg. 541 ; 5 Humph. 496 ; *Collins* v. *Meyers*, 16 Ohio, 547.

3. The deed is also fraudulent because it extends the time of the collection of the debts past due beyond the ordinary time required therefor by law. *Henderson* v. *Downing*, 2 Ohio, 106.

SIMRALL, C. J., delivered the opinion of the court.

The motion to dissolve the injunction was made on the face of the bill.

The trustee and the creditor of Harman had procured an injunction restraining the express company and the sheriff from selling property which had been levied on under a judgment and execution in favor of the Southern Express Company, against Harman. The goods were merchandise, and embraced in the deed of trust. The Southern Express Company affirms that the deed of trust is fraudulent, and that the *intent* " to hinder, delay, or defraud existing creditors" is apparent from the deed itself. That is the single question argued by counsel : whether the deed is fraudulent on its face.

The assignment, or conveyance, must be " devised and contrived of malice, fraud, covin, collusion, or guile," with " intent to hinder, delay, or defraud " those injured thereby. The *intent* must exist. The " *intent* " may be vicious, though the deed is fair and regular on its face, and a full price may have been paid. Such intent must be proved *aliunde*. In all

instances where the transaction on its face is fair, if it sprung from the motive to " hinder, delay, or defraud," that is purely a question of fact, to be established by testimony.

But there are also conveyances which, on inspection, are esteemed fraudulent in law. Perhaps no more is meant by the term " fraudulent in law," when applied to such instruments, than that the terms of it — its conditions, stipulations, and reservation — are such that the inference will be drawn by the court that it was contrived to hinder, delay, or defraud creditors. The effect and operation of a written instrument is a question of law, and where the natural and necessary consequence of its provisions is to delay, hinder, or defraud creditors, the court will so declare. The intent is gathered from the instrument, and no external aid is necessary to develop it.

A party will be held as " intending " the natural and inevitable effects of his acts. If his deed necessarily operates to interpose unreasonable hindrance and delay to creditors, or to defeat them altogether, the intent will be a conclusion of law. A deliberate act, which produces naturally and inevitably a certain result, must, in law, be held as contrived and done to carry out and consummate that result. The court, in such a case, arrives at the conclusion, by construction of the instrument, that such is its direct and inevitable effect, and it results, as matter of law, that the statute is satisfied.

Though the act, in a moral view, was entirely fair, suggested by affection, and though the real purpose was to pay all debts, yet if the conveyance be of the character and operation just described, it will not stand against creditors.

If it were otherwise, the statute would be evaded, which condemns any contrivance to hinder, delay, or defraud creditors. *Sturdevant* v. *Davis*, 9 Ired. 363; *Briggs* v. *Mitchell*, 60 Barb. 288.

The deed of trust was executed by Harman on March 22, 1877, and recites an indebtedness of Harman to White of $8,764.91, as follows: On open account, due January 1, 1876, $1,039.69; on a note due December 1, 1873, for

$3,333.26, and on another note for the like sum, due December 1, 1874. This indebtedness, with interest, was agreed by White to be extended for three years, and a note embracing the entire amount, viz., $8,764.91, of even date with the deed, was made by Harman, to fall due on March 22, 1880. It also recites that White is to advance $10,000 per year for the two years 1877 and 1878, to enable Harman to buy goods and general merchandise for his business at Goodman.

To secure this indebtedness, White conveys to Gwin, trustee, two or three parcels of land; and also all his stock of merchandise, of whatever kind, owned by Harman, and in his store-house at Goodman; also all the liens, mortgages, notes, book-accounts, and evidences of debt, of every sort, then owing to him; also all the goods and merchandise, of every sort, which he may thereafter acquire and place in his store-house, or in connection therewith; and also each and every debt, of all kinds and descriptions, that may accrue to him after the date of the deed until the maturity of his note, in 1880. Harman may "carry on the business, and continue in possession of the lands and goods and choses in action, under the direction of the trustee, until he shall take possession of the same."

The conditions are, that if Harman shall promptly pay his indebtedness the deed shall be void; but if he shall in any way fraudulently dispose of any of the property, or shall fail to pay his indebtedness when due, the deed shall be executed by taking the property into possession and sale by the trustee.

The scheme, as delineated in the trust-deed, was this: that if Harman would create a security embracing all the merchandise then on hand, and all other goods which he might thereafter put in the store, and also all the debts then due him, and all that accrued to him up to the 22d of March, 1880, then White would extend the large indebtedness for three years, and would supply $20,000, — $10,000 in 1877 and $10,000 in 1878, — with which to replenish and keep up his stock; but if he (Harman) acted

fraudulently, the trustee would interpose before default made in payment of the debts.

If these stipulations had the direct and inevitable effect to hinder and delay other creditors, then the conclusion of law is that the deed was made with that " intent." The intent is deduced from a construction of the instrument, and therefore no other fact need be inquired into or found.

If the deed should be valid, the effect would be that White held a shifting lien, which took hold of the goods on hand, and as these were sold off it separated itself from the effects in the hands of Harman's customers, but at once fastened upon the note, or book-account, owing by the buyers; and when the merchandise was brought into the store, it at once became impressed with the lien; from the merchandise it passed to the debts of the customers who bought it. And thus the plan was that the business should revolve in this cycle, the subjects of the lien undergoing mutations from goods to debts, for the space of three years. In the meantime the other creditors must stand the varying fortunes of the venture, without power or right to move against the goods or the credits of Harman, for White's security attaches to both, as they may be severally acquired. Other creditors are excluded from the goods at any time on hand, and from the debts that have accrued to Harman; so that there is absolutely nothing that can be reached before 1880, if White, the beneficiary, does not sooner close out. Under this deed the goods on hand, goods afterwards acquired, and the profits of the business are reserved for White, and there is nothing for other creditors; they must wait till the experiment of gain or loss has been tried, and may be required to wait for three years, and that is an unreasonable time. *Farmers' Bank* v. *Douglass*, 11 Smed. & M. 469.

The general rule, supported by authorities of greatest weight and sustained by the best of reason, is, that where a mortgage is made of an entire stock of goods, which includes all other articles of like nature that may be put in the store

and be on hand when default is made, the mortgagor remaining in possession, and selling in the usual course of business, and making purchases to replenish the stock, it is fraudulent as to creditors. The subject is ably considered in *Robinson* v. *Elliott*, 22 Wall. 513, and *Collins* v. *Meyers*, 16 Ohio, 547. See also *Simmons* v. *Jenkins*, 76 Ill. 479 ; *Freeman* v. *Ransom*, 5 Ohio St. 1 ; *Hutman* v. *Osgood*, 51 N. H. 192. Many other cases might be cited.

If the arrangement fairly deducible from the trust-deed was, to allow the grantor to retain possession and make sale of the goods for his own benefit, the security will not avail against creditors. *Simmons* v. *Jenkins*, 76 Ill. 479 ; *Horton* v. *Williams*, 21 Minn. 187. Precisely what is included in the deed is the stock of goods then in the store-house, and future acquisitions of like goods put there, the debts then due Harman, and all other debts that may be created and be owing, from the date of the deed until the 22d of March, 1880. The parties intended that this retail store should be conducted as was customary. Nothing is said about *cash* sales, or money thus derived. The lien expressly applies to the merchandise and the credits. If a note, or other form of credit, represents goods sold, the deed reaches them ; and the intendment is, that the lien does not follow the goods, but shall operate on the credit. But the parties have not expressly stipulated as to the money received from cash sales. That is subject to the control and disposition of Harman.

The hope and expectation of Harman and White was that the profits of the business within the three years would pay the indebtedness to White, or greatly reduce it; and their contract was framed on the idea of excluding other creditors from intermeddling until the experiment had been fully tried. The contract clearly discloses that idea and motive. The benefit to Harman would have been great, for it would enable him to retain and sell and replenish, until out of the profits he might pay his indebtedness to White, without hindrance from other creditors. That would be a

most substantial benefit to him.   If the mortgagor is to reap
benefit by a business continued in that mode, the security
would be invalid against a judgment-creditor.   *Gardner* v.
*McEwen*, 19 N. Y. 123; *Eagill* v. *Hast*, 3 Seld. 213; *Russell* v. *Winne*, 37 N. Y. 594.

There has been much discussion, of late years, as to the
extent a debtor may encumber future acquisitions, to secure
his creditor.   The subject was considered in *Everman & Co.*
v. *Robb*, 52 Miss. 657.   That it may be done to a limited
extent, and upheld against other creditors, the authorities
undoubtedly teach.

We do not think that a mortgage of a stock of goods
remaining with the mortgagee for sale and replenishment, so
as to make it attach to the substituted goods, and the notes,
and accounts, and other forms of credit for which they may
be sold, is valid in law.   There are a class of cases which
hold that if the mortgage includes an existing stock, and
replenishments from time to time made, it *may* be good if
the mortgagee takes possession before the lien of a creditor is
acquired.   *Hunt* v. *Bullock*, 23 Ill. 323; *Simmons* v. *Jenkins*,
76 Ill. 483.   But with that class of cases we have no concern.

If the deed of trust is void, because of its provisions, in
respect of the goods and the credits, it is void as to every
other kind of property embraced in it.   *Goodrich* v. *Downs*,
7 Hill, 439; *Jackson* v. *Packard*, 6 Wend. 415; *Russell* v.
*Winne*, 37 N. Y. 595, 596.

Judgment affirmed.