## E. RICHARDSON ET AL. *v.* E. MARQUEZE ET AL.

1. ASSIGNMENT FOR CREDITORS. *Fraud in law and in fact. Construction.*
Preferential assignments should, *per se*, be judged favorably by the same principles of law as those which are *pro rata*, but they are subject to a jealous scrutiny of the facts. *Arthur* v. *Commercial Bank*, 9 S. & M. 394, explained.

2. SAME.  *Reservation of Exemption.   Certainty.*

Such an assignment of specific property, and of all which the debtor owns except what he has a right to hold under the State exemption laws, is valid, and he may, it seems, retain his exempt property.

3. SAME.   *Credit sales.*

Discretion in the assignee to sell for cash or on credit, as will in his opinion best promote the interest of the *cestuis que trust*, does not make the assignment fraudulent *per se*, but its effect is a question of fact.

4. SAME.   *General discretion.*

The assignment is not fraudulent in law because it empowers the assignee generally to do with the assets whatever will in his judgment best promote the interest of the creditors, for this authority is subordinate to the main purpose of the deed.

5. SAME.   *Assistants.   Grantor.*

The deed may authorize the employment of assistants, and the grantor and his former clerks may be engaged, if they are mere instruments of the assignee's will, and the business is conducted under his direction.

6. SAME.   *Continuing business.   Receiver.*

If the assignee, without authority in the deed, purchases new goods and makes advances upon mortgages of growing crops, a receiver will be appointed, although such conduct was to prevent the loss of debts due from customers to whom the grantor was advancing.

7. SAME.   *Fraud in fact.*

The assignment is fraudulent in fact, if executed by the grantor in order that another should so manage the business that he could retrieve his losses by other adventures, or for the purpose of regaining possession of the property in contemplation of such conduct.

APPEAL from the Chancery Court of Hinds County.

Hon. E. G. PEYTON, Chancellor.

*Shelton & Shelton*, for the appellants.

1. The grant is not rendered void by the exception which refers for certainty to the exemption laws that define the property and describe the only mode of its allotment.   Delay of identity, which is the effect of the statute, is not fraudulent. *Dow* v. *Platner*, 16 N. Y. 562.   If an exemption were excepted by specific description and other property were allotted, the exception would go to general creditors, and the exemption right would be lost, or enforced on the property conveyed. Authorities sustain this reasoning.   The case of *Sugg* v. *Tillman*, 2 Swan, 208, proceeded on the ground that the exemption was *reserved* out of property conveyed, and that, if *excepted*,

the attaching creditor's title to the goods seized was superior, because there had been no separation. Adopting that construction, the case of *Farquharson* v. *McDonald*, 2 Heisk. 404, sustained a similar conveyance with an exception against a bill in chancery by creditors attacking it upon that ground. The case of *Overton* v. *Hollingshade*, 5 Heisk. 683, as interpreted by a subsequent decision, is inapplicable to the case at bar. *McCord* v. *Moore*, 5 Heisk. 734. The principle of the Tennessee decisions is uniform; and the misapplication thereof in *Sugg* v. *Tillman, ubi supra*, was caused by a misinterpretation of the reservation impossible in this case, which is an exception, and by a question of legal title, which cannot arise on this bill in chancery. Conveyances like this have been sustained elsewhere. *Mulford* v. *Shirk*, 26 Penn. St. 473; *Heckman* v. *Messinger*, 49 Penn. St. 465; *Hollister* v. *Loud*, 2 Mich. 309; *Smith* v. *Mitchell*, 12 Mich. 180; *Walker* v. *Newlin*, 22 Kansas, 106; *Strong* v. *Carrier*, 17 Conn. 319; 1 Story Eq. Jur. § 367.

2. Excessive discretionary power is not conferred by the deed, which imposes on the trustee the judicious limit, to begin at once and dispose of the property as the best interests of the creditors shall dictate. If he is sufficiently honest and capable to be trusted with the property, he may be trusted with the power. *Bennett* v. *Union Bank*, 5 Humph. 612; 1 Am. Lead. Cas. 75; Burrill on Assignments, 287. Authority to sell on credit is not *per se* fraudulent, and in this case, as matter of fact, is necessary to a proper execution of the trust. Goods would have been wasted by selling immediately for cash, and debts lost by refusing to secure them by means of new purchases and advances upon crops. This power has indeed been declared fraudulent in New York by a divided court, and the same has been held in Illinois and Missouri. *Burdick* v, *Post*, 12 Barb. 168, 185. But the weight of authority is to the contrary. *Abercrombie* v. *Bradford*, 16 Ala. 560; *Shackelford* v. *Bank*, 22 Ala. 238; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *Conkling* v. *Coonrod*, 6 Ohio St. 611; *Baldwin* v. *Peet*, 22 Texas, 708; *Bennett* v. *Union Bank*, 5 Humph. 612; *Hopkins* v. *Ray*, 1 Met. 79; *Billings* v. *Billings*, 2 Cal. 107; *Bank* v. *Inloes*, 7 Md. 380; *Berry* v. *Matthews*, 13 Md. 537; *Farquharson* v. *Eichelberger*, 15 Md. 63; *Marks* v. *Hill*, 15 Gratt.

400. This power may, like any other fact in the case, on a question of fraud, be considered by the court or jury. 1 Am. Lead. Cas. 67; Burrill on Assignments, 287, 296. Dishonesty of the trustee might equally exist if his powers were restricted, and delay, necessary to execute the trust, is merely incidental to the purpose of the deed. *Gilpin* v. *Smith*, 11 S. & M. 109; *Hafner* v. *Irwin*, 1 Ired. 490; *Dance* v. *Seaman*, 11 Gratt. 778; Burrill on Assignments, 450, 468.

3. The trustee was not guilty of such maladministration as to justify his removal. Cash purchases and advances in order to secure old debts by mortgages, were authorized by the trust deed, if for the interest of creditors. The trustee regarded them as advantageous to the extent he carried them, and there is no proof that he went too far or made an injudicious transaction. Under the valid power to employ assistants, the trustee properly engaged the grantor and his clerks, who were acquainted with the business. He was not bound to be always present, but, like every business man, could rely upon his employees. There is no pretence of negligence or bad faith. If the beneficiaries interested in the trust, however, are satisfied with its administration, the complainants, who upon their own showing have no claim upon the assets unless they overturn the assignment, have no right to the appointment of a receiver.

*W. P. & J. B. Harris*, on the same side.

1. A debtor, while his dominion over his property continues and no liens interfere, may assign it to a trustee, to be applied to his debts, in the order prescribed by the assignment. *Nicoll* v. *Mumford*, 4 Johns. Ch. 522; Burrill on Assignments, 17. Neither law nor morality condemns preferential assignments. Judges have allowed mere sentimental antipathy to carry them to the extent of inventing pretexts for holding them void. They are placed, it is said, under the rigid limitations, that they must be absolute and irrevocable, must reserve no benefit to the debtor, and must not impose conditions intended to extort from creditors concessions of rights. *Burdick* v. *Post*, 12 Barb. 168; *Grover* v. *Wakeman*, 11 Wend. 187; *Hafner* v. *Irwin*, 1 Ired. 490. But those limitations are as applicable to an assignment for the equal benefit of all the creditors. A pref-

erential assignment is rigidly scrutinized because of the temptation to the debtor to secretly save something, and to the creditor to sacrifice others' interests, but, if free from fraud and provisions inimical to creditors, it is entitled to the same protection as other conveyances. 1 Am. Lead. Cas. 86. It creates a trust, and the trustee is subject to the control of a court of equity. In its interpretation courts assume that the intention is honest, and doubtful provisions are so construed as to sustain the instrument. Burrill on Assignments, 421, 422.

2. The provisions for executing the trust are proper. While the deed is void if its purpose is delay, yet it may postpone creditors without being void. *Ingraham* v. *Grigg*, 13 S. & M. 22. A debtor, who has parted with his property, has rights which should be respected, and a Court of Chancery will prevent the sacrifice or waste of the property, and favorably consider his right to relief from his debts to the extent of the value of the property assigned. *Angell* v. *Rosenbury*, 12 Mich. 241. Provisions looking to that end will be liberally construed. No time should be fixed for winding up the trust, for it is difficult to decide what would be proper. Burrill on Assignments, 287 ; Bump Fraud. Con. 407 ; *McClung* v. *Bergfeld*, 4 Minn. 148. And discretionary powers in the trustee will be reasonably construed as subsidiary to the paramount purpose of the deed. *Hollister* v. *Loud*, 2 Mich. 309. The cases of *Farmers' Bank* v. *Douglass*, 11 S. & M. 469, and *Henderson* v. *Downing*, 24 Miss. 106, do not meet the case of an absolute assignment of all the debtor's property. Power to sell on credit should also be discretionary. *Rogers* v. *De Forest*, 7 Paige, 272 ; *Berry* v. *Matthews*, 13 Md. 537 ; *Farquharson* v. *Eichelberger*, 15 Md. 63 ; *Shackelford* v. *Bank*, 22 Ala. 238; *Gimell* v. *Adams*, 11 Humph. 283 ; *Hoffman* v. *Mackall*, 5 Ohio St. 124 ; Bump Fraud. Con. 410. Directions to delay sale or give credit may raise a presumption of fraud, but are not fraudulent *per se*. *Gilmer* v. *Earnhardt*, 1 Jones, 559 ; *Hardy* v. *Skinner*, 9 Ired. 191 ; *Hardy* v. *Simpson*, 13 Ired. 132. Much of this fund consists of debts due from customers of a credit business founded on an industry which has but one annual fruit. Seven months intervene between the planting and gathering of cotton. There can be no rule for managing

such a fund except what would guide a prudent man acting for himself.  The trustee's action in making advances to debtors was merely ancillary to realizing the fund.  *Marks* v. *Hill*, 15 Gratt. 400 ; *DeForest* v. *Bacon*, 2 Conn. 633 ; *Kendall* v. *New England Carpet Co.*, 13 Conn. 383.  The true distinction is between cases where the assignment is a mere security and time is given to the debtor, or where a long period of management is fixed by the deed, and the case of an absolute assignment where the provisions relate to the winding up of the estate profitably to creditors.  Such provisions are construed as subordinate to the main object, and creditors have the protection of the courts as if the deed was silent.  *Hill* v. *Kendall*, 25 Vt. 528 ; Bump Fraud. Con. 404, 410.

3. Reservation of the exemption is proper in the manner here adopted.  No method of ascertaining property exempt was provided either in the bankrupt law or the law which gave the widow her deceased husband's exemption, because it was supposed that no difficulty could arise under the statute which made specific exemptions by a plain definition.  Excepting the exemption is equivalent to omitting it from the deed.  4 Kent Com. 468.  Whether the exemption be ascertained before or after the assignment is immaterial.  It must conform to the law in either case, and in neither is it conclusive against creditors.  It is an interest defined by law for the guidance of all persons dealing with it.  The only decision supposed to militate against this view (*Sugg* v. *Tillman*, 2 Swan, 208) has been so explained in subsequent decisions in Tennessee that there only remains the technical distinction between a reservation, or after clause, and an exception from the general terms of a grant.  In Pennsylvania exceptions of exempt property by reference to the law have been held to be free from objection. *Mulford* v. *Shirk*, 26 Penn. St. 473 ; *Knight* v. *Waterman*, 36 Penn. St. 258 ; *Heckman* v. *Messinger*, 49 Penn. St. 465.  Judge Cooley, in the case of *Brooks* v. *Nichols*, 17 Mich. 38, speaking of the general assignment and such reservation of the exemption, said that there was no more difficulty in the assignee selecting what was not exempt than exists when an officer is charged to make a levy.

*W. P. Harris* and *D. Shelton* each made an oral argument.

*M. Green*, for the appellees, argued orally and filed a brief.

1. Preferential assignments, though admissible, are to be watched with jealousy. They violate the predicate, that the proceeds of goods shall pay parties from whom they were bought. *Hilliard* v. *Cagle*, 46 Miss. 309, 344. And if the necessary result is to defraud creditors, proof of honest intent is inadmissible. *Harman* v. *Hoskins*, 56 Miss. 142; *Bank* v. *Inloes*, 7 Md. 380; *Mitchell* v. *Stiles*, 13 Penn. St. 306; *Gibson* v. *Love*, 4 Fla. 217. Unlimited discretion in conducting the business is fraudulent *per se*. *Owen* v. *Body*, 5 A. & E. 28; *Bodley* v. *Goodrich*, 7 How. (U. S.) 276. All over what is necessary for the devotion of the property to the payment of the debts cometh of evil. *Arthur* v. *Commercial Bank*, 9 S. & M. 394, 433. Power to sell on credit and indefinite continuance of the business, which are incompatible with an immediate application to the debts, are contrary to the intent of such an instrument; and, without a satisfactory description of the property embraced, it affords opportunities for deception. This deed contains powers similar to the mortgage declared fraudulent in the case of *Joseph* v. *Levi*, 58 Miss. 843.

2. The trustee has power to sell on credit. *Brigham* v. *Tillinghast*, 13 N. Y. 215; *Nicholson* v. *Leavitt*, 6 N. Y. 510; *Page* v. *Olcott*, 28 Vt. 465; *Billings* v. *Billings*, 2 Cal. 107; *Inloes* v. *American Bank*, 11 Md. 173; *D'Ivernois* v. *Leavitt*, 22 Barb. 63; *Curtis* v. *Leavitt*, 15 N. Y. 9; *Hutchinson* v. *Lord*, 1 Wis. 286; *Truitt* v. *Caldwell*, 3 Minn. 364; *Sutton* v. *Hanford*, 11 Mich. 513; *Barney* v. *Griffin*, 2 N. Y. 365; *Keep* v. *Sanderson*, 2 Wis. 42; s. c. 12 Wis. 352; *McCleery* v. *Allen*, 7 Neb. 21. Such power is held to be a badge of fraud in *Carlton* v. *Baldwin*, 22 Texas, 724; *Johnson* v. *McAllister*, 30 Mo. 327; *Shackelford* v. *Bank*, 22 Ala. 238; *Hoffman* v. *Mackall*, 5 Ohio St. 124; *Billings* v. *Billings*, 2 Cal. 107; *Gimell* v. *Adams*, 11 Humph. 283; *Gates* v. *Labeaume*, 19 Mo. 17; *Christopher* v. *Covington*, 2 B. Mon. 357; *Farquharson* v. *Eichelberger*, 15 Md. 63. In Missouri the statute allows sales on credit. In Massachusetts fraud is always a question of fact. In Mississippi there is no direct decision, but in effect it is held that sales on credit are not allowed, by holding that the time for closing the trust should not be longer than that within which

a debt could be enforced at law. *Farmers' Bank* v. *Douglass*, 11 S. & M. 469, 539. If longer time be given, the deed is fraudulent. *Henderson* v. *Downing*, 24 Miss. 106, 116. Three years is too long in a mortgage. *Harman* v. *Hoskins*, 56 Miss. 142.

3. The deed is void because it does not specify exempt property reserved. A sheriff who levies on property claimed as exempt is a trespasser. Code 1880, §§ 1244–47. There is no proceeding by which the trustee can force the debtor to elect. He can be compelled to elect only by execution. If the grantor refuses possession, the trustee must resort to a possessory action. Until separation of interests replevin will not lie by one joint tenant against the other. *Holton* v. *Binns*, 40 Miss. 491. Nor could there be partition. The grantor has the right of selection. Not until selection would the trustee's right be complete to any one piece of property. It follows that the debtor can retain all personalty of like kind as the law declares exempt. Such a deed has been condemned in several States. *Sugg* v. *Tillman*, 2 Swan, 208; *Clark* v. *Robbins*, 8 Kansas, 574.

4. A receiver was proper. Power in the trustee to employ assistants is a strong though not conclusive badge of fraud. *Planck* v. *Schermerhorn*, 3 Barb. Ch. 644; *Hart* v. *McFarland*, 13 Penn. St. 182. The object of having a non-resident trustee was either to throw the management into irresponsible hands or reserve it for the grantor, and as the debtor and his clerks have possession, the latter appears to have been the motive. *Cram* v. *Mitchell*, 1 Sand. Ch. 251. Formerly the grantor did business at his own risk, now at the risk of his creditors. No court could sanction the purchasing and advancing business. It imperils the fund. By filing the bill the creditors acquired a lien (Code 1880, §§ 1843, 1845), and hence a right to have the property preserved from waste. *Vause* v. *Woods*, 46 Miss. 120. A writ of sequestration would lie under the facts proved. Code 1880, § 1854.

*J. A. Brown*, on the same side, argued orally and in writing.

1. The business was conducted after the assignment as it had been before by the grantor and his clerks. Generally the assignee was absent. Months have passed since the deed was executed, purchases are being made, and supplies advanced upon mortgages of crops, yet it does not appear that a creditor

has been paid, and no intimation is given that this proceeding will cease until the assets are consumed. If the assignment had authorized that course of business, it would have been void on its face. *Harman* v. *Hoskins*, 56 Miss. 142. As it does not authorize it, a receiver was properly appointed. *Dunning* v. *Mead*, 90 Ill. 376. Creditors whose liens attached by filing the bill (Code 1880, § 1845) attacked the assignment as fraudulent in fact, and moved, upon the ground of maladministration by the trustee, for the appointment of a receiver in order that the fund might be preserved to answer the ends of the litigation.

2. The applicability of the rule of construction *ut res magis valeat quam pereat*, which opposing counsel make the foundation of their arguments, is denied in this case. The maxim applicable here is *Verba fortius accipiuntur contra proferentem ;* for, says Blackstone, " men would always affect ambiguous and intricate expressions, provided they were afterwards at liberty to put their own construction upon them." 2 Black. Com. 380. This applies peculiarly to an assignment to a trustee for creditors ; and, if the deed may mean that the property is to be embarked in speculation for the benefit of the grantor, trustee, and others, it is no answer to show that it may be equally construed to mean something else highly proper. They will construe according to their convenience. A curious illustration of this we have : counsel interpret the deed to the court as directing the assets to be converted into money and paid to creditors within a reasonable time, while their clients are conducting, under the assignment, a hazardous advancing business.

CHALMERS, C. J., delivered the opinion of the court.

On the 8th of March, 1881, T. E. Richardson, an insolvent merchant in the city of Jackson, made an assignment of all his property of every character and description, except so much of it as was by law exempt from execution, for the benefit of his creditors ; dividing the creditors into four classes, and directing that these classes should be paid in the order of their numerical priority ; thus giving preferences among them, the effect of which might be, and probably was, that those belonging to the fourth and most numerous class would receive nothing. The

assignee took possession, and was proceeding to administer the trust, when he was intercepted by the filing of this bill by creditors belonging to the fourth and least favored class. The bill assails the assignment, as being fraudulent on its face, and prays that it may be so declared, and that the complainants may be permitted to subject the property conveyed to the payment of their demands. Some time after the filing of the bill an application was made for the removal of the assignee named in the instrument, and for the appointment of a receiver. This motion was based both upon the alleged fraudulent character of the deed of assignment, and upon alleged misconduct on the part of the assignee in the conduct of the business. It was supported by affidavits showing what that conduct had been, and, upon the hearing, the Chancellor sustained the motion, removed the assignee, and appointed a receiver. From this order the assignee and preferred creditors appeal. Three features in the assignment are mainly relied upon as demonstrating its fraudulent character, and to these we will in turn address ourselves ; but, before doing so, it may be well to consider somewhat the character of these conveyances. They are materially different from mortgages and trust deeds, to which in form they assimilate. Mortgages are intended to provide security for a debt or debts, the immediate payment of which, so far from being then contemplated, is by the instrument itself declared to be postponed to some future day. An assignment, on the contrary, is a *quasi* payment, or at least a provision for payment. Neither instrument can be allowed to embody in itself stipulations inconsistent with its professed object; but, as the ends contemplated are materially different, that which would condemn one may be entirely admissible in the other. The very delay contemplated by the mortgage, and frequently constituting the consideration for its execution, might in the other be fatal to its validity. As we have remarked, the underlying idea of an assignment for the benefit of creditors is payment; and the more strictly the provisions of the conveyance are confined to effecting this end, the more perfectly it effects the object of its execution. But immediate and unconditional payment is not essential, or commonly possible. If it was, there would be no necessity for making the

instrument. Although therefore the necessary effect of the conveyance may be to produce delay in the collection of the demands of some of the creditors, this will not of itself avoid the deed. A conveyance made *for the purpose* of hindering or delaying creditors is denounced by the Statute of Frauds; but, although its necessary effect may be to produce more or less of delay, this will not render it void, if the delay was not the moving cause of the conveyance, but merely one of its incidental consequences. When an insolvent person proposes to assign his property for the purpose of providing a fund for the liquidation of his debts, while he may to a certain extent prescribe the conditions on which the conveyance is made, yet he must bear ever in mind the professed object of the transaction, and be careful to insert no stipulations which thwart the scheme. By his act he professes to divest himself of the property, and assign it through a trustee to those to whom he is indebted. He must not therefore impress his own will upon it to an extent inconsistent with its application within a reasonable time to the demands for which he professes to provide, nor impose conditions upon it, which are manifestly intended not for the benefit of the creditors, but for his own. The delay, if any, must be such as will make the fund more productive for their benefit rather than for his own. While anything that tends to increase the fund must necessarily be both for his benefit and for theirs, the test of *bona fides* must be whether the object was his advantage or theirs. Whatever may be the law in other States, there is in this State no difference whatever in the law applicable to an assignment giving preferences, and one which provides for a *pro rata* distribution of property among all creditors. No principle is better settled in this State than that an insolvent debtor may make preferences among his creditors, even to the extent of transferring all his property to one, leaving all others unprovided for. If he may do this by an instrument which takes the shape of a deed in fee, certainly he can embody it in one which is in form an assignment to a trustee for the benefit of creditors. The principle cannot be altered by a change in the form that the conveyance assumes. We had occasion in the recent case of *Eldridge* v. *Phillipson*, 58 Miss. 270, to review our decisions on this sub-

ject, and to show to what extent the doctrine had been carried.
It is true that it was said in *Arthur* v. *Commercial Bank*, 9
S. & M. 394, 433, that an assignment with preferences must con-
tain no condition, direct or indirect, controlling its applica-
tion.   " All over and above what is necessary for the devotion of
the property to the payment of the debts cometh of evil."   It
was further said in the same case that " a preference given by
a general assignment does not therefore of necessity invalidate
the deed, yet all such preferences are liable to objection, and
must be watched with jealousy.   Though they may create
suspicion, they are not in themselves fraudulent."   These
criticisms must, in view of the well-settled doctrine of this
court that preferences are always allowable and sometimes
laudable, be construed as referring to matters of fact rather
than to invidious distinctions of law.   It is doubtless true that
a fraudulent debtor would be more apt to make a preferential
assignment than one which distributed his property *pro rata*.
The preferred creditor would be more willing to cloak the
assets for his benefit.   It would be the more easy to insert
fictitious debts, or to magnify in favor of wife or children or
intimate friends the amount of the debts really due them,
or in many ways to procure secret and unlawful benefits for
the maker of the instrument; and hence, as matter of fact, it
is undoubtedly true that preferential assignments should be
scrutinized more carefully and jealously than those making
*pro rata* distribution.   But this is a jealousy and a scrutiny of
the facts, and not of the law applicable to the instruments.
If they successfully bear the most rigid and searching investi-
gation of the facts, and are found to be free from all taint of
actual fraud, they are to be judged by the same principles of
law, and are entitled to the same consideration and favor, as
those without preferences.   In short, preferential assignments
with us can only be condemned as fraudulent in law for de-
fects which would warrant a condemnation of those which
provide for the payment of all debts alike.   The cardinal tests
to be applied to either class of instruments may, in a general
way, be reduced to two, to wit: first, has any benefit been
reserved to the grantor; and, second, does the conveyance
contain stipulations inconsistent with its professed object, and

which render its execution in a reasonable time impossible or difficult? Most valid objections to either class of assignments are usually resolvable into one of these heads, and instruments which are found free from these will usually be held unobjectionable.

As before remarked, there are three principal objections urged against the assignment in this case, as showing upon its face that it is fraudulent in law : first, because the grantor excepts out of his property so much as is by law exempt from execution, and reserves the same to himself; second, because by the terms of the instrument the assignee is authorized to sell the property conveyed either for cash or on credit, as he may deem most beneficial for the creditors ; third, because, as is alleged, the assignee is authorized to carry on the mercantile business in which the grantor was engaged, for the benefit of the creditors, in the same way as the grantor was himself carrying it on before the execution of the deed of assignment.

First, as to the reservation of the exempt property. In this conveyance, after a specific and full enumeration of all the grantor's property, consisting of all the goods, wares, and merchandise contained in two storehouses in the city of Jackson, together with all the notes, accounts, and assets belonging thereto, some real estate particularly described, and ten head of mules, there is a general grant of all property belonging to the grantor in these words: " Every and all right, title, claim, and interest in any and all property and valuables of every sort, kind, or description, save and except such as I have a legal right to retain and hold under the exemption laws of this State." It is insisted that this reservation or exception of the exempt property out of the property assigned renders the deed void on its face. If this position had not received the sanction of a court of high character, and was not sustained by the opinion of a judge of excellent repute, it would be difficult for us to imagine how a debtor could be supposed to perpetrate a fraud on creditors by reserving to himself that which the law under all circumstances reserves to him, and which it prohibits its officers or his creditors from interfering with or molesting in any way, except where he has voluntarily incumbered or

conveyed it.  But the Supreme Court of Tennessee, in the case of *Sugg* v. *Tillman*, 2 Swan, 208, in an opinion delivered by Judge Caruthers, held that an assignment for creditors was rendered fraudulent and void because of the insertion in it of a provision in these words, " reserving to myself, however, out of the aforesaid stock, farming utensils, provender, provisions, household and kitchen furniture (as all of my property of that description, as well as every other description, is intended to be embraced by this conveyance), so much as I am by law allowed to retain free from execution."  The opinion was placed upon the twofold ground that it was an attempted reservation of property covered by the deed, and, being inconsistent with it, nullified the instrument ; and that, inasmuch as the exempt property was not specifically described, it made the entire conveyance void for uncertainty.

This strikes us as a remarkable decision.  It is true that a man cannot by one and the same instrument convey an estate and at the same time reserve the same property or any part of it ; and, if he attempts to do so, the reservation is void ; but it is quite manifest that nothing of that sort was here attempted. It was simply a conveyance of all the debtor's property, except a certain portion, to wit, that which was by law exempt from execution.  As to that portion, there was no conveyance and consequently no conflict.  So much of this decision as declared that the reservation of the exempt property rendered the deed void because it was an attempt to reserve that which was by the deed conveyed, was by the same court overruled in the later case of *Farquharson* v. *McDonald*, 2 Heisk. 404. The court, however, in the later case seem still to be of the opinion that there must be some definite ascertainment and description of the property claimed as exempt, in order to render the reservation good, at least where the property is of that character that the debtor is entitled to select a certain amount out of a larger mass.  Whether it was meant that a failure to make this selection in advance of an attack upon the conveyance by some dissatisfied creditor would avoid the whole deed, or would only have the effect of causing a loss of the exemption, does not in this case clearly appear ; but in the still later one of *Overton* v. *Holinshade*, 5 Heisk. 683, it is

distinctly announced that its effect will be to render the entire conveyance void. We cannot assent to any of these decisions. As above indicated, we concur in so much of the later ones as repudiate the idea that the deed is void because there is an attempted reservation inconsistent with the general grant, — but we dissent from them in thinking that a failure specifically to describe the exempt property renders the conveyance void for uncertainty. If it has any evil effect whatever, manifestly it must be to render void the claim for exemption, and to cause a forfeiture of such claim. It is the exception or reservation that is insufficiently described, and thereby left uncertain and void ; while the conveying words of the instrument, being definite and embracing all the property of the grantor, must be operative to pass it all. The rule is well settled that in order to except certain property out of a conveyance, which without the exception would carry all, the words of exception must be as definite as those required to convey title ; and that, if they are not so, the whole property passes. An exception must be a part only of the thing granted, must be a particular thing out of a general one, and must be described with certainty. Co. Litt. 142 *a*. In a grant of land, excepting one and a half acres, the exception is void for uncertainty, and the title to the whole passes to the grantee. The language both of grants and of exceptions is to be taken most strongly against the grantor. *Darling* v. *Crowell*, 6 N. H. 421, and cases cited. We agree, however, with the Supreme Court of Michigan, in *Smith* v. *Mitchell*, 12 Mich. 180, that a reservation of exempt property without a minute specification of it neither avoids the deed nor is void in itself for uncertainty. That is certain which may be made certain. The law fixes the amount of the exemptions and points out the mode of its ascertainment. It was remarked by the court, in the case last cited, that " a *bona fide* selection is as practicable here as under a levy." We are not aware that officers holding executions or attachments ever experience any difficulty in finding out what is and what is not exempt by law to the debtor, and this, it would seem, can be as readily done by an assignee under a general assignment. Where the right of selection resides in the debtor, he can easily be made to exercise it, or forfeit

it; and to compel him to do so would seem far more reasonable
than to declare a conveyance embracing thousands of dollars
worth of property void, because of the failure accurately to
enumerate and describe the two mules, or the four cows and
calves, that he claims as exempt.   To declare an instrument
void for such a reason could only be justified on the ground
that the law or the courts hold preferential assignments *mala
per se*, which, as we have declared, is not the rule in this
State, though such instruments have usually received ex-
ceptionally severe treatment in other States.   Our opinion is
that the deed of assignment is not rendered void in this case
because of the reservation of the exempt property, nor did
the debtor lose the right to claim it, because it was not specifi-
cally described. *Mulford* v. *Shirk*, 26 Penn. St. 473 ; *Heckman*
v. *Messinger*, 49 Penn. St. 465 ; *Brooks* v. *Nichols*, 17 Mich. 38 ;
*Hollister* v. *Loud*, 2 Mich. 309.

Was the assignment fraudulent on its face because it gave
the assignee power in his discretion to sell the property for
cash or " on such advantageous credit terms as said trustee
shall deem for the best advantage for all the creditors " ?   It
is quite universally admitted that an assignment which *re-
quires* .the property to be sold on a credit is fraudulent and
void, because it is an attempt, upon the part of him who pro-
fesses to be transferring his property to others, to impress upon
it a condition inconsistent with their right to realize their
debts out of it.   If the property is to be theirs, they and not
he should say whether it shall be sold on a credit.   Whether
the same result will follow where there is a discretion con-
fided to the trustee to sell for cash or credit, as shall in his
opinion best promote the interests of the *cestuis que trust*, is a
question upon which the authorities are in hopeless conflict.
Bump, in his work on Fraudulent Conveyances, broadly lays
down the doctrine that it will not, and seems to think that
this is clear on the authorities.   Bump Fraud. Con. 410.   Our
own investigations have led us to the conclusion that there
is perhaps no question on which the authorities are more evenly
divided, and that it is, therefore, one upon which each court
may feel entirely at liberty to adopt whichever view seems to it
best.   It would be useless to repeat the various arguments on

the one side or the other. The cases on both sides are collected in the note by Bump, and certainly the argument seems in these cases exhausted. We content ourselves, therefore, with announcing our concurrence with those decisions which hold that whether a provision authorizing the assignee to sell on a credit is fraudulent or not is a question of fact rather than of law, and cannot therefore justify a court in declaring such a deed, *ipso facto*, void. Such a power in the trustee may be of the greatest benefit to the beneficiaries, and should not be branded as necessarily covinous and fatal to the instrument. On the contrary, it may be used to the very great detriment of creditors, and exclusively or principally for the benefit of the debtor. It seems wisest, therefore, to hold it a question of fact, allowing the jury or the Chancellor to say in each case whether, looking to all the facts presented, it was inserted for the benefit of the grantor, or in order that by avoiding a forced sale of the property it might be made to realize a larger sum for the payment of the debts. If ascertained to have been inserted for the benefit of the debtor, it will render the conveyance void, and expose the property to the attacks of those dissatisfied with it. If intended to operate for the benefit of creditors, it will be sustained; but it will still be in the power of the court to order the assignee to sell for cash where such is the expressed desire of the beneficiaries, or where, in its own opinion, this will best promote the interests of a majority of them. Such construction should be given to all instruments as tends to promote rather than to destroy their object where that object is not itself illegal. *Ut res magis valeat quam pereat.* In any case, whenever it is made to appear to a Court of Chancery that the assignee is abusing the discretion vested in him, or using it for the benefit of the grantor to the detriment of the creditors, he will be removed and a receiver appointed.

The other principal objection urged against the deed of assignment is, that it permits the assignee to carry on and continue the mercantile business, buying and selling in the ordinary course of trade, and replenishing the stock on hand at pleasure for an indefinite period. If such is its character, it is of course fraudulent under the principles announced in *Harman*

v. *Hoskins*, 56 Miss. 142, and in *Joseph* v. *Levi*, 58 Miss. 843. The words of the deed which are relied on as showing the investiture of the assignee with these powers are as follows: " and generally to do and perform to and with my assets and property herein conveyed whatever will, in his judgment, best promote the interests of the creditors." As broad as this language is, and perhaps it is not well chosen because of its universality, we do not think it was intended to bear the obnoxious meaning sought to be attributed to it. When power is given to do whatever will best promote the interests of creditors, we must construe it as meaning whatever it is lawful for the grantee to do in the execution of the trust and no more. We cannot, for the purpose of destroying the instrument, impute to it an intention to do an unlawful thing because of a general grant of authority to do all that will tend to carry out and make it effectual. This would be a palpable violation of the maxim quoted above.

Our conclusion is, that there was nothing on the face of the deed which made it fraudulent in law. On the hearing of the motion to remove the assignee and appoint a receiver, testimony was adduced showing the mode and manner in which the assignee was administering the trust, and this testimony demonstrated that he was doing the very things which, if he had been by the deed authorized to do, it would have made the conveyance void, that is to say he was carrying on the business very much as if no assignment had been made. The assignee was but little in Jackson, and the business, though transacted in his name and doubtless under his orders, was in fact conducted by the grantor and his former clerks. The deed gave the assignee power to employ assistants, as was entirely proper, nor was it necessarily wrong in him to employ the grantor and his former clerks, provided matters were in fact conducted under his direction, and the assistants employed were the mere instruments of his will; but neither in person nor by others could he administer the trust as it was in fact administered. The business in hand was to sell out the property as speedily and as advantageously as possible, to collect the choses in action and with the proceeds pay off the debts in the order of priority named. Instead of doing this, the stock

was replenished by fresh purchases and sold out on credit upon mortgages of ungrown crops, and generally the same course of dealing was pursued that in all probability had brought the unfortunate debtor to ruin in the first instance. The excuse for this is sought in the statement that such purchases only were made as sufficed to keep up the stock, so as to dispose of it to the best advantage, and they were bought for and sold only to those to whom the grantor was already under obligations to make advances to enable them to complete their crops, and that if this had not been done the whole of such debts would have been lost.   Plausible as this excuse is, and however honestly the parties may have supposed they were acting within the powers conferred, such dealing with property assigned for the payment of debts is wholly unwarranted and inexcusable.   The position of an assignee is much like that of an administrator.   His sole business is to pay debts and return the excess, if there be any, to the maker of the deed.   In the absence of express authority given him, he has no right to imperil a dollar of the assets by risking it on the uncertainties of crops to be grown in the future, nor has he any authority to spend any portion of the money on hand in buying new goods except where authorized by the deed of assignment and then only to such limited extent as is necessary to work off the stock on hand.   Such things, in the absence of authority, can only be done by the unanimous consent of each and every creditor protected by the conveyance.   The assignee was rightfully removed for undertaking, without the assent of the creditors, to do that which, if authorized by the deed, would have made it void.

In the future development of the case, if the facts shall demonstrate that the course of conduct pursued was in the contemplation of the grantor in executing the deed, and that it was executed for the purpose of being replaced in possession of property which he pretended to assign, or for the purpose of having the business carried on by another in such manner that there might be opportunity afforded of retrieving his losses by more fortunate ventures in the future, it will become the duty of the Chancellor to annul it as fraudulent in fact.

*Decree affirmed, and cause remanded for further proceedings.*