BANK OF HAZLEHURST *v.* GOODBAR & CO. ET AL.

FRAUDULENT CONVEYANCES.    *Merchants' deed of trust.    Stock of goods. Retention of possession.    Continuance of business.*

The deed of trust of an insolvent merchant, conveying his stock of goods and store accounts, is void as to creditors, when he is permitted to continue the business, using and selling the goods, and reinvesting the proceeds, under a parol agreement cotemporaneous with the execution of the deed.    *Harman* v. *Hoskins*, 56 Miss., 142; *Joseph* v. *Levy*, 58 *Ib.*, 845; *Britton & Mason* v. *Creswell*, 63 *Ib.*, 394; *Tallman & Co.* v. *Tuttle Bros.*, 65 *Ib.*, 495, cited.

FROM the chancery court of Copiah county.

HON. H. C. CONN, Chancellor.

This was a proceeding in equity by Goodbar & Co., creditors of Millsaps & Bro., to set aside as fraudulent certain conveyances made by that mercantile firm to certain relatives of the members thereof, and also a deed of trust in favor of the Bank of Hazlehurst, which last mentioned instrument included, with the lands thereby conveyed, personal property described as the "stock of goods and store accounts of Millsaps & Bro., at the Brown's Wells store, now in their possession." The bill charges that, since the deed of trust was executed, Millsaps & Bro., by agreement with said bank, made when the deed of trust was executed, had remained in possession of all the property therein described and conveyed, including the said stock of goods, notes and accounts, with the power, under the

deed, of selling, collecting and disposing of the same, and had been selling and disposing of said stock of goods and collecting said notes and accounts since the execution of said deed, as they did before its execution, with the consent and agreement of the holders of the debt secured by the deed of trust and the said Bank of Hazlehurst.

The defendants, Millsaps & Bro. and McLaurin Millsaps, answered, denying all fraud, and especially denying the allegation of the bill that they had remained in possession of the stock of goods, notes and accounts, with the power of selling, collecting and disposing of the same, and had continued to exercise such power as they did before executing the deed. By way of explanation of what occurred at the time of, and subsequent to, the execution of the deed, they alleged that Millsaps & Bro. were largely indebted to the Bank of Hazlehurst on a balance due on the business of 1894, and most, if not all, of the notes and accounts had been pledged to the bank as collateral security for said indebtedness during 1894; that, at the beginning of the year 1895, Millsaps & Bro., finding that they were unable to collect said notes and accounts for account of said bank, and that the parties owing them were not able to pay without further advances to make crops during 1895, and the said Millsaps & Bro., not being able to make such advances, entered into an arrangement, with the consent of all parties concerned, by which McLaurin Millsaps, who was then engaged in business on his own account, should furnish said debtors with such small amounts as they were compelled to have in order to make a crop during said year 1895, and, out of the proceeds of said crop, McLaurin Millsaps was to pay himself the amounts so advanced, and collect and pay over the balance, or so much thereof as possible, to the bank, to be credited on the debt of Millsaps & Bro.

The Bank of Hazlehurst answered, denying all fraud, insisting on the validity of its debt and the deed of trust to secure the same, and adopting the above answer as its own.

The complainant examined T. E. Millsaps, of the firm of Millsaps & Bro., who testified that it was agreed between his firm and the bank, at the execution of the deed of trust, that his firm should remain in possession and carry on the business as before, save that they were to sell only to old customers whose notes and accounts were held by the bank as collateral. He admitted that Millsaps & Bro. kept possession and sold the goods, after the execution of the trust deed, for cash, and that while the sales between the dates of the deed, February 8, 1895, and the filing of the bill, March 15, 1895, were very small, only amounting to a few dollars, they sold to everybody who applied to buy; that they collected cotton between said dates, from some of the old customers, whose notes had been first pledged to the bank, and then transferred to McLaurin Millsaps, and that with the cash coming to their hands from such sales and collections they bought other goods and paid other debts than that of the bank; that the stock of goods on hand when the deed of trust was made did not exceed $100 in amount, and consisted of such plantation supplies as meat, shoes, tobacco, etc.; that the object of their continuing the business, and of the agreement in reference thereto, was merely to aid the old customers by selling to them on credit, and thus enable them to make a crop and pay something on their debts which had been transferred to the bank as collateral security.

Covington, the president of the bank, and McLaurin Millsaps, who were also examined by complainant, united with this witness in admitting that Millsaps & Bro. were to remain in possession of the goods, with power to sell and dispose of them under an agreement to that effect cotemporaneous with the execution of the trust deed, and in saying that McLaurin Millsaps was to furnish Millsaps & Bro. the money and new goods necessary to do business during the year 1895, but they all state that the agreement only covered sales to the old customers whose notes had been pledged to the bank and then transferred to McLaurin Millsaps.

T. E. Millsaps stated the transfer to McLaurin Millsaps was to secure him for the advances he was to make, the bank to be paid whatever balance of proceeds might remain in his hands. Covington said the bank was to get all the cotton collected from the customers. McLaurin Millsaps testified that, as to some of the debts of the old customers transferred to him, he was to keep and own all that he collected, and, as to the others, he was first to pay himself what he had advanced to Millsaps & Bro. and then pay the balance to the bank.

The complainants' attorney testified that, just before filing the bill of complaint, he inquired of Covington as to the nature of the agreement entered into at the time the deed of trust was executed, especially as it might relate to the continuance of the business by the debtors, and was informed they were to go on just as they had done before. Covington stated that he did not remember this, but would not deny it. The complainants were granted the relief asked for as to the deed of trust in favor of the Bank of Hazlehurst, which was canceled, and that defendant alone appealed.

*J. S. Sexton*, for the appellant.

1. The personal property sought to be conveyed by the deed of trust is insufficiently described. The words, "stock of goods and store accounts at the Brown's Wells store, all now in their possession," are too indefinite to convey any property of Millsaps & Bro., and the deed of trust was, therefore, no hindrance to creditors in the subjection of any goods or store accounts owned by that firm. *Izon* v. *Tailby* (Eng. Court of Appeals), 23 Repr., 190; *Nicholson* v. *Karpe*, 58 Miss., 34; *Kelley* v. *Reid*, 57 Miss., 89; *McCord* v. *Cooper*, 30 Ind., 9.

2. If the property so described was worthless, or did not belong to Millsaps & Bro., then creditors have no more right to complain than they would have to object to the transfer of exempt property. The facts show that in no case could Millsaps & Bro. derive any benefit from retaining possession of the pit-

tance of goods on hand at the execution of the trust deed, or the continuance of a business carried on under the circumstances and for the purpose here shown.    The testimony of T. E. Millsaps shows that the bank was to get all the profit of the business in part payment of its debt, and that, after the execution of the deed of trust, the business was differently conducted, in that no effort was made to induce trade, the store being kept closed in the intervals when no buyers were in attendance.    The cases relied upon by the appellees have no application to this controversy, resting, as they do, upon wholly different facts.    "A chattel mortgage which permits the mortgagor to retain possession and sell, is not unlawful or fraudulent *per se*, if the proceeds are to be paid over to the mortgagee or otherwise applied on the mortgage debt."    *Brackett* v. *Harvey*, 91 N. Y., 214; *Ford* v. *Williams*, 24 N. Y., 359; *Conkling* v. *Shelley*, 28 N. Y., 360; *Miller* v. *Lockwood*, 32 N. Y., 293; *Robertson* v. *Elliott*, 22 Wall., 524; *Metzner* v. *Graham*, 57 Mo., 404; *Adler* v. *Claflin*, 17 Iowa, 89; *Kleine* v. *Katzenberger*, 20 Ohio St., 110; *Abbott* v. *Goodwin*, 20 Me., 408; 5 Am. Rep., 630, and cases cited.


*R. N. Miller*, for the appellees.

The trust deed cannot escape the condemnation of the law by reason of the smallness of the assets and business of the Brown's Wells store.    The law makes no distinction, in such cases, between big frauds and little ones.    The defense founded upon the alleged limitations under which the business was carried on after the execution of the deed, and the pretended purpose of the debtors in carrying it on, is wholly without merit. The testimony on these heads is contradictory, but in no view of it would the transaction be relieved of its most objectionable features.    The business was, beyond all question, carried on by the debtors substantially as it had been before the deed of trust was made, and this in pursuance of an express verbal agreement entered into cotemporaneously with the execution of

that instrument. The transaction falls directly under the con-demnation of the following authorities: *Britton & Mason* v. *Creswell*, 63 Miss., 394; *Baldwin & Co.* v. *Little & Co.*, 64 *Ib.*, 126; *Farmers' Bank* v. *Douglass*, 11 Smed. & M., 469; *Summers & Brannin* v. *Roos*, 42 Miss., 749; *Harman* v. *Hos-kins*, 56 *Ib.*, 142; *Tallman & Co.* v. *Tuttle Bros.*, 65 *Ib.*, 492; *Joseph* v. *Levy*, 58 *Ib.*, 845; *Burwell* v. *Smith*, 4 N. Y. Chy. Rep., 913; Bump on Fr. Con., 22 *et seq.*, 476, 478; Code 1892, § 4226.

COOPER, C. J., delivered the opinion of the court.

It is the misfortune of the appellant that in the security it accepted from its debtors was included the mortgage of the stock of goods and store accounts, under a contemporaneous oral agreement by which the debtors were permitted to con-tinue their mercantile business, using the mortgaged stock of goods therein, selling the same, and reinvesting the proceeds. Under a long line of decisions, mortgages of this character have been held fraudulent and void as to other creditors. *Har-man* v. *Hoskins*, 56 Miss., 142; *Joseph* v. *Levy & Co.*, 58 Miss., 845; *Britton & Mason* v. *Creswell*, 63 Miss., 394; *Tallman & Co.* v. *Tuttle Bros.*, 65 Miss., 495.

And, whether the agreement appears in the instrument or is shown by extraneous evidence, the same result will follow and the instrument be condemned. *Britton & Mason* v. *Creswell, supra.*

*Decree affirmed.*