## MEAD *v.* PHILLIPS and others.

Where an insolvent debtor, in a voluntary assignment made for the benefit of credi-
tors, (and giving preferences,) first provided for the payment of *all costs and ex-
penses necessarily incurred by him,* in defending any suits that might be institu-
ted against him by any creditor or other person, for any thing growing out of the
assignment, or in any way connected with it:

*Held,* that the assignment was fraudulent against his creditors.

The debtor attached to the instrument a schedule of debts owing by him for which
one of his assignees was liable as indorser. The assignee denied such liability,
and there was no proof that the assignor owed more than one of those debts. He
also inventoried as assets due to him, a large amount of notes, which were wholly
fictitious.

*Held,* that these circumstances strongly corroborated the inference of fraud, derived
from the provision for paying the costs and expenses of defending suits.

The possession of *things in action* remaining in the assignor after they have been
assigned for creditors, requires explanation, as well as that of goods and chattels.
And when a substantial portion of the assigned property, consisting principally of
promissory notes and household furniture, was suffered to remain in the assignors
possession for three months after the execution of the assignment; it was *held*
indispensable, in order to rebut the presumption of fraud, that the assignee should
prove the existence of the indebtedness, in consideration of which the assignment
was ostensibly made.

Where the assignee or grantee, in a conveyance which is impeached on the ground
of fraud, instead of disclaiming, puts in an answer which requires the complainant
to reply and go into proofs; and it turns out that the conveyance is fraudulent,
and such assignee had direct or constructive notice of the fraud; he will be sub-
jected to the costs of the suit.

June 30 and July 1; August 23, 1843.

THE bill in this cause was filed by Mead, a judgment and
execution creditor of Henry Phillips, to set aside as fraudulent
against creditors, a deed of certain real estate executed by him
to the defendant, Clarissa Howard, dated April 20, 1841, and
an assignment from him to Mrs. Howard and N. Ferris, dated
August 31, 1841, which transferred all the property of Phillips
in trust for the payment of his creditors, in the order therein
specified.

Mrs. Howard was the mother-in-law of Phillips. The deed
was absolute, and expressed a consideration of $1000, but was
in fact made without any consideration.

The property assigned consisted of goods in a store, book accounts, notes, and some household furniture and store fixtures. One of the assignees, Ferris, obtained immediate possession of the goods, books of account, and store fixtures. The furniture and notes remained in Phillips's possession for more than three months afterwards. One of the notes was never delivered to the assignee. All of the others turned out to be fictitious. There were no such persons as those whose names were signed to the notes.

Mrs. Howard, in her answer, admitted the acceptance of the deed, and that it was without consideration. She denied any notice of a fraudulent intent, and submitted her claim under it to the court.

She denied having accepted the assignment, or acted under it. It was proved that she signed the formal acceptance at the end of the instrument, but it did not appear that she had ever acted as assignee.

Some additional facts are stated in the opinion of the court.

The bill was taken as confessed against Phillips, as an absent defendant, and the cause was heard against him on a master's report of the facts.

*H. A. Foster*, for the complainants.

*P. A. Cowdrey*, for Ferris, the assignee.

*J. Dikeman*, for Mrs. Howard.

THE ASSISTANT VICE-CHANCELLOR.—The conveyance of the real estate, executed by the defendant Phillips, to Mrs. Howard, was confessedly fraudulent as against his creditors. The counsel for Mrs. H. raises no question upon it, except in reference to costs. If she had admitted the complainant's rights in her answer, and disclaimed any interest under the deed as against creditors, she would probably have been exempted from costs; instead of that, she compelled the complainant to reply to her answer, and prove his case, and she submitted her claim to the decision of the court; thus making

an argument necessary. She is, therefore, liable to pay the costs incurred by her acceptance of a fraudulent conveyance, with reasonable notice of the fraud.

The principal question in the case arises upon the assignment executed by Phillips to Mr. Ferris and Mrs. Howard. If Phillips made it with the intent to hinder, delay, or defraud creditors, it is void, although his assignees were perfectly honest, and entirely ignorant of his design. I may say here, that there is nothing in the case to impeach the integrity and good faith of Mr. Ferris. As to Mrs. Howard, she denies having accepted the assignment, or acted under it. This is immaterial in reference to its validity, for if she refused to accept it, she never became a trustee, and the other assignee became vested with the trust, in the same manner as if she had not been named in the instrument.

Her hand and seal to the acceptance of the trusts, at the end of the assignment, is decisive against her answer in this respect. And she has called no witness to sustain her statement.

The assignment classifies the creditors, and gives preferences. Schedule C contains the third class, and is to be paid before those contained in Schedule D. The creditors named in Schedule C, have debts amounting to more than $6000, and in the assignment these debts are described as having been indorsed by Mrs. Howard, and that she is liable for them. Mrs. H., in her answer, denies any liability for either of these debts, and declares that the indorsements purporting to have been made in her name, were never made by her; in short, that they are forgeries.

Another remarkable circumstance, is the false show of assets made by the assignment. Several thousand dollars are set forth as due to the assignor in notes; all of which notes, except one of $1125 16, given by William Phillips, Mr. Ferris has ascertained to be fabrications, and he says that there are no such persons in existence, as the drawers of the notes. The next fact to which my attention was directed, is a provision in the assignment, succeeding the direction for the payment of the several classes of creditors, and which is in these words, viz : " Excepting, nevertheless, in all cases, the right of

" payment, and deducting from the payments herein before
" provided for to be made, all the expenses necessarily incurred
" in the execution of this trust, and also to retain out of the
" proceeds of this assignment, *all costs and expenses* necessa-
" rily *incurred by me* or my assignees, hereinbefore named, *in*
" *defending any suits* that may hereafter be instituted *against*
" *me* or them, or either of them, *by any creditor or other per-*
" *son* or persons, for *any matter* or *thing growing out of, or*
" *in any way connected with this assignment.*"

It was well said on the argument, that the law *tolerates* as-
signments giving preferences ; it does not *favor* them. And
one inflexible condition of that toleration is, that the debtor
shall not reserve by the assignment any benefit or advantage
to himself out of the assigned property, either pecuniary, or by
coercion of his creditors, or by a control over the disposition
of the fund. Even a discretion in the assignees as to the dis-
tribution of the fund, will vitiate the assignment. *Boardman*
v. *Holladay*, decided by the Chancellor, April 4, 1843.(*a*) I
think that the clause just stated from this assignment, was an
attempt by the debtor to secure a benefit from the fund to which
he was not entitled ; and if upheld, would enable him, were he
so disposed, to drive his creditors into almost any terms of com-
promise. I cannot imagine any suit that might be brought
against the debtor, relative to the assignment, in which *he* need
to incur any costs for the benefit of the fund. But there are
many supposable cases in which the provision in question
might be used inequitably. It is a standing notice to all credi-
tors, that any effort which they may make to question the
amount due to them or to others as stated in the assignment,
or to compel its execution, will be resisted by the debtor ; that
he will contest such efforts to the end of the law, and will
then subtract the " *costs and expenses incurred by him*" in so
doing, from the fund to which they are looking for a dividend.
Another effect of the clause would be to postpone a distribution
for an indefinite length of time. The assignees could not rea-
sonably conjecture, after one sound law suit was commenced

(*a*) Now reported in 10 Paige's R. 223.

for " *any matter or thing growing out of, or in any manner* " *connected with, the assignment,*" what amount of expenses would be incurred by Phillips in the course of the litigation ; and to avoid responsibility they would defer the close of their trust, until all these things should be ascertained. In the mean time, creditors sick with hope deferred, would be ready to accept almost any per centage on their debts and release the residue. It is evident, that the clause enables Phillips to determine what suits shall be defended, and to what extremity of appeal such defence shall be carried. It therefore places in his hands a means arising from the assigned property, to deter creditors from questioning his acts, and ultimately to coerce them into his own terms of settlement.

It is no answer to the argument, that the power is contingent, and that no occasion has arisen for its operation. The same was said of the coercive clause in *Wakeman* v. *Grover,* (4 Paige 23, and 11 Wend. 187.) The question is, what does it enable the debtor to accomplish ; and the law presumes that he intended all that the instrument provides. I cannot resist the inference of a fraudulent intent on the part of Phillips in this provision of the assignment.

The other remarkable circumstances which have been mentioned, strongly corroborate this inference. The schedule of fictitious assets was well calculated to deceive the creditors, especially such as made no minute or particular investigation as to the extent of the fund ; and to keep them quiet and dissuade them from attacking the assignment, till Phillips could arrange his plans, and bring them gradually into his terms. While the long list of indorsed paper, for which Mrs. Howard was liable, as stated in Schedule C, if also fictitious, not only counterbalanced the apparent result obtained, by adding the fabulous assets to the actual fund, but furnished a sinking fund, which would be certain to swallow up whatever the assignment realized beyond the two first classes of preferred debts. It would also enable Phillips to settle and discharge, for trifling amounts, the claims of the business creditors in Schedule D, who, looking at the amount in the three prior schedules, could not fail to perceive that the fund would never

reach them. Are we warranted in considering the twelve debts, scheduled in C, as fictitious? There is no proof of their existence, except it be the one to Cutter, Bulkley & Merritt. One of the complainant's witnesses proves that Phillips was indebted to that house, but the amount of the debt does not correspond with that stated in the schedule, and it does not appear that it purported to be indorsed or secured by Mrs. Howard. As no other debt to Cutter, B. & M. is mentioned in the assignment, I will assume that this one is proved. As to the residue of the debts in Schedule C, a material part of the allegation in the assignment, relative to their existence, is the liability of Mrs. Howard with Phillips. It is a statement of debts due from both. It is shown to be false, as to Mrs. H., and I am bound to believe that it is false as to both.

This leads me to speak of another ground on which the complainant attacks the assignment. The assigned property consisted of goods in the store of Phillips, book accounts, the notes before mentioned, and household furniture, in his dwelling-house of the value of $75 to $100. The goods and books of account were delivered to the assignee immediately, and they constitute the great bulk of the property assigned. As to the notes, they remained in Phillips' possession. About three months after the assignment, the fictitious notes were delivered to Mr. Ferris ; but the note of W. Phillips, the only genuine note, never came into his hands. The furniture remained in Phillips' house, (which was not occupied by his family,) for a considerable period, when he removed it to Brooklyn ; and Mr. Ferris obtained it from thence, about three months after the execution of the assignment.

The non-delivery of the furniture and notes to the assignee, is urged as evidence of fraud. The assignee's counsel insisted that inasmuch as things in action are not included in our statute on this subject, the notes are to be laid out of view, and the argument rested upon the furniture only. I think that his position is not tenable. The possession of things in action remaining in the assignor or vendor, unchanged, was always presumptive evidence of fraud against creditors, upon a principle of the common law, which is equally applicable to lands

and chattels. Especially ought this principle to apply to choses which are negotiable, and the possession of which is alone evidence of title.

I need not determine whether the omission to deliver a small portion of the assigned property, (in this instance it was about one third,) would be a badge of fraud, when the assignee is shown to have taken the immediate possession of the residue, and to have continued in the possession thereof; the assignment being shown to have been made in good faith in all other respects. The want of an immediate and continued change of the possession of a material or substantive portion of the assigned property, renders it imperative for the party supporting the validity of the transaction, to prove that it was executed *in good faith, and without any intent* to defraud.

In the case of *Hanford* v. *Artcher*, (4 Hill's R. 271, 295,) in which the Court for the Correction of Errors sustained the view adopted on this point of possession being evidence of fraud, by the same court in *Smith & Hoe* v. *Acker*, (23 Wend. 653,) Senator Hopkins, who delivered the principal prevailing opinion, declares that proof of an honest debt, &c., is *essential to show good faith,* when possession does not accompany and follow the assignment.

That proof is not made in this case. The consideration upon which the assignment reposes, is the indebtedness of Phillips to the various persons set forth as his creditors in the instrument itself. The recital in the assignment is not sufficient evidence of the indebtedness, when proof of the fact becomes material to the validity of the instrument. And the testimony here establishes but a very inconsiderable portion of the whole debt set forth in the schedules. The suspicion which attaches to the whole transaction, in consequence of the fabulous indorsed paper of Phillips which is preferred in schedule C, renders incontestable proof of the residue of the consideration doubly important.

Senator Hopkins says, in the case of *Hanford* v. *Artcher*, (4 Hill, p. 295–6,) that the proof of consideration, to show good faith in a case like this "must go beyond a mere paper acknowledg- "ment of it that might be binding between the parties."

Instead of *good faith* on the part of Phillips being shown here, the evidence strongly indicates fraud. The consideration of the deed of trust is not proved; an important part of it is disproved. The assets assigned are falsely exaggerated, so as to impose upon the creditors. The assignor had previously made a covinous disposition of his real estate; and the willing instrument of that fraud was made one of his assignees, without any design that she should act for the benefit of his creditors, but avowedly to look after his interests only.

Considering the intent manifested by the clause of the assignment which I have discussed at large, the evidences of bad faith just enumerated, and the presumption arising from the assignor's continuing in possession of a material part of the property transferred; I am convinced that this assignment was made with the intent to hinder or delay and defraud creditors.

There must be a decree declaring that the deed to Mrs. Howard, and the assignment to Mr. Ferris and Mrs. H., are fraudulent and void as against the complainant, and setting them aside as against him. The assignees must pay to a receiver, sufficient of the effects assigned, to satisfy the complainant's debt, interest and costs in this cause. If the assignees require it, a master may ascertain the amount in their hands, applicable to this suit, and on taking the account they will be allowed for their disbursements under the assignment, and for payments made in pursuance of it before the commencement of the suit. The receiver will pay to the complainant according to his priority in reference to other creditors' suits, if there be any. In case the fund is insufficient to pay the complainants' debt, interest and costs, he may have a decree against Mrs. Howard for the deficiency of the costs.