# Frank, et al. v. Myers, et al.

*Bill to Enforce Trust created by General Assignment.*

1. *Exemptions reserved by exception in grant* —In an assignment for the benefit of creditors, the grantor may reserve by an exception his right to exemptions.

2. *Exception in deed does not avoid the grant.*—Where a general assignment conveying all the debtor's property contained a provision reserving to the debtor, all exemptions allowed by law, the assignment is not void for uncertainty, because the exempted property is not

97 437
101 574
97 437
106 123
108 474
97 437
115 453
97 437
130 604
97 437
133 361
97 437
143 234

[Frank, et al. v. Myers, et al.]

specifically described, the exception alone is void.--*Block v. Maas,* 65 Ala. 211, and *Myers v. Conway,* 90 Ala. 109, overruled.

3. *Delivery cures uncertainty of description* —Conceding that the description of personal property in an assignment is indefinite, its delivery by the grantor for the purposes of the trust sufficiently identifies the property and cures the defect.

4. *Trustee exercising good faith protected.*—Where an assignee replevies the trust property attached by creditors of the assignor and after a defense made in good faith, judgment is rendered against him, such judgment is conclusive on him and the beneficiaries in the trust-deed.

APPEAL from Birmingham City Court. .
Heard before the Hon. H. A. SHARPE.

JOHN VARY, N. B. FEAGIN, and WATTS & SON, for appellants, insisted that the deed of assignment was not void, citing *Freeman v. Bank,* 46 N. W. Rep. 36; *Brooks v. Nichols,* 17 Mich. 38; *Flournoy v. Lyon,* 62 Ala. 213; *Richardson v. Marqueze,* 59 Miss. 80; *Meyer v. Conway,* 90 Ala. 109; 18 Ind. 507; 67 Md. 480; 16 N.·Y. 562; 6 Maine, 395; 62 Wis. 167; *Ib.* 69; 61 *Ib.* 293; 1 Am. & Eng. Ency. 852; *Bank v. Dunn,* 67 Ala. 381; *Maas & Block v. Long,* 70 Ala. 237; *Loeb v. Manasses,* 78 Ala. 555; *Sugg v. Tillman,* 2 Swan. 208; 49 Pa. St. 465; 26 *Ib.* 473; 35 Ga. 180; 34 Ala. 93; *England v. Reynolds,* 38 Ala. 370.

MOUNTJOY & TOMLINSON, and GARRETT & UNDERWOOD, for appellees, relied on *Block v. Maas,* 65 Ala. 211; *Meyer v. Conway,* 90 Ala. 109; *Fry v. Bank,* 75 Ala. 473; s. c. 69 Ala. 348; *Robinson v. Mauldin,* 11 Ala. 977.

HEAD, J.—M. J. Mullane, an insolvent merchant, executed to Meyers what professed to be a general assignment of all his stock in trade and other property, of value many thousand dollars, for the benefit of his creditors. The instrument was in due form, perfect in all its parts, possessing no infirmity whatever as a complete legal transfer of all the property of the assignor for the payment of his debts, except that it concluded with the following clause : "But the party of the first part making this assignment reserves to himself any and all exemptions to which he is entitled under the laws of the State of Alabama." The assignee accepted the trust; took immediate possession of all the property and entered upon the duties prescribed by the instrument. At this point the appellees and J. J. Callaghan and J. A. Mullane, alleged creditors of the assignor, and defendants in this bill, attached all the goods in Myers' possession.

[Frank, et al. v. Myers, et al.]

Myers claimed and replevied them under the statute. Trials of the right of property were had and, the bill avers, the court decided, and so instructed the jury, that the clause we have quoted above rendered the assignment inoperative as a conveyance of the legal title, and, upon that ground alone, verdicts and judgments were rendered for the plaintiffs in attachment, condemning the property to the satisfaction of their demands. After Myers regained possession under his claim bonds, he sold all the property for over $16,000. Not returning the property after its condemnation, his bonds were returned forfeited and executions issued thereon, under the statute. The bill, which is filed by sundry creditors, inferentially avers that Myers has paid defendants, Callaghan and Mullane, the amounts of their demands. It further avers that Meyers has on deposit in the First National Bank of Birmingham, which is also made a party defendant, $5000. of the proceeds of the goods, which said attaching creditors are seeking by process of garnishment against the bank to condemn to the satisfaction of their statutory judgments againt Meyers; that the claims of Callaghan and Mullane, some $8000. are simulated, and that the aggregate amount of all the claims of the attaching creditors largely exceeds the value of all the property which went into Myers' possession as assignee. Its prayer is for a settlement of the trust; that the attaching creditors be enjoined from collecting and disposing of any of said trust fund, and the trust fund be brought into, and subjected to the control of the court; that the judgments in favor of Mullane and Callaghan be set aside and the sums of money, by them received, be, by them, paid into court, &c., and for general relief. The appellees appeared and demurred and moved to dismiss the bill for want of equity. The City Court, in a written opinion, held that the exemption clause in the assignment avoided the instrument; and rendered a decree sustaining the demurrers and dismissing the bill for want of equity.

As the bill itself states, its theory is, that the assignee acquired by the assignment an equitable title to the goods, which it was and is his duty to assert; that assets have been and are about to be taken from him and diverted from the trust, by proceedings of renouncing creditors in conrts of law, enforced through the legal title of the assignor, and based, in part, upon simulated claims; and that equity should intervene and enforce the equitable title, restrain the further collection and diversion of the assets by the attaching creditors; compel the restoration of the funds received

by them upon simulated claims, and take charge of, and administer the trust.

The question, then, first to be determined, is, What is the nature and effect of the instrument in question? Does it convey a legal title, or a mere equity, or neither?

We remark just here, that the expression *"reserves to himself,"* was used, in the clause quoted from the assignment, in the sense of an *exception*, and not a *reservation*. As may be seen from authorities cited hereafter, a *reservation* is a clause in a deed whereby the grantor reserves some new thing to himself issuing out of the thing granted and not *in esse* before; but an *exception* is always of a part of the thing granted, or out of the general words or description in a grant. The books call attention to the frequent misuse of these terms; but in all cases effect is given to the clause as a reservation or exception, according to the subject-matter to which it applies, without regard to the term used. We will speak of it, then, in this opinion, as an exception. The validity of assignments for creditors, as affected by exceptions of exemptions like that in the present case, has frequently undergone discussion and adjudication in our highest courts. It is conceded, we believe, in all the authorities, except one in Tennessee, since overruled, that such an exception does not render the conveyance *fraudulent*, because creditors have no right to subject exempt property to their debts, and the exception therefore does not prejudice them. That is the settled doctrine of this court. The point of attack lies in its alleged invalidity said to be found in the want of sufficient identification and description, in the instrument, of the property attempted to be conveyed. It is said to be an attempt to convey an uncertain and undefined part only of a larger quantity or mass of property, and, therefore, inoperative and void.

Our research discloses that the courts of last resort of Penn., Wisconsin, Iowa, Maryland, Kansas, Indiana, Kentucky, and Texas, have passed upon such assignments and sustained their validity.—26 Penn. (St.) 473; 69 Wis. 561; 63 Iowa, 25; 10 Atlantic Rep. (Md.) 289; 22 Kan. 106; 18 Ind. 507; 78 Ky. 297 and 22 Tex. 709.

The question, however, of sufficiency of identification of the property to pass the title was not raised or considered in the cases cited. In each case, the assignment was assailed as fraudulent, by reason of the exception, and that contention being overruled, the instrument was upheld as a valid legal conveyance and enforced accordingly.

The Supreme Courts of Michigan, Missouri, Mississippi,

Tennessee, and this Court have passed upon the question now presented; the three former sustaining the assignments: *Brooks v. Nichols,* 17 Mich. 38; *Rainwater v. Stevens,* 15 Mo. App. 544; *Richardson v. Marqueze,* 59 Miss. 80, and the two last holding that, by reason of the exception, there was no sufficient identification of the property to pass the legal title; whether the assignment was of any effect in equity was not expressly considered, though the Tennessee case was a bill in equity by creditors to set aside the assignment and the relief was granted.—*Sugg v. Tillman,* 2 Swans, 208; *Block v. Maas,* 65 Ala. 211; *Myers v. Conway,* 90 Ala. 109.

In the case of *Sugg v. Tillman, supra,* no authorities are cited, and the point is dismissed with the following reasons: "But upon another ground it," the clause excepting exemptions, "would avoid the deed. It is in the nature of a sale of all the property of the vendor of the same nature to these trustees for the payment of debts, except so much of the same as he is allowed by law to hold exempt from execution. Now what is sold is not separated from that which is reserved from the sale. All the corn lies together in a heap, all the pork in the smoke-house, all the horses in the stable, all the cows in the pen, &c., &c. The vendees or trustees can not bring trover for the quantity conveyed to them, because it is not separated from the part retained. They have no title in any particular thing or quantity. The debtor may pass his claim from one part of the bulk to another under this undefined right until all is consumed. The property, therefore, under this principle, not passing at all, remains subject to other execution creditors, to the complainants." In *Block v. Maas, supra,* the reasoning is short and we quote it: "The distinction between a bargain and sale by which title passes immediately to the vendee, and an executory agreement, the goods remaining the property of the vendor until it is executed, cannot be more certainly and clearly traced in any class of cases, than where there is a power of selection reserved by the vendor, or by the vendee, to distinguish and identify the goods sold from other goods in the possession of the vendor". The law is said to be stated *very perspicuously* by Bailey, J., in *Gillett v. Hill,* (cited in Benj. on Sales, p. 258) in the following words: "The cases may be divided into two classes; one, in which there has been a sale of goods, and something remains to be done by the vendor; and until that is done, the property does not pass to the vendee so as to entitle him to maintain trover. The other class of cases is where there is a power of selection in the vendor to deliver which he thinks fit; then the right to them

does not pass to the vendee until the vendor has made his selection, and trover is not maintainable till that is done. If I agree to deliver a quantity of oil, as ten out of eighteen tons, no one can say which part of the whole quantity I have agreed to deliver until a selection is made. *There is no individuality until it has been divided.*" "The rule is too well settled to be open for discussion, that goods sold must be capable of being separated, distinguished, and identified from the stock, or mass, or quantity, with which they may be mingled, before title passes from vendor to vendee. Until there is such separation, they remain the property of the vendor who must bear the loss, if they perish."—*Myers v. Conway, supra,* follows that argument. In line with these, counsel cite us to *Mobile Sav. Bank v. Fry,* 69 Ala. 348, and other cases, where the well settled doctrine is declared that a sale of an uncertain part of a quantity or mass of goods, or of such part of the quantity or mass as the vendor may afterwards select, is inoperative, until selection, because of the want of identification of the goods intended to be sold. The principle is elementary and can not be disputed. The question is upon its proper application.

There is a very important rule, in the construction of conveyances, applicable with peculiar force, it seems to us, to instruments of the kind in question, utterly fatal to the correctness of the conclusions reached in *Sugg v. Tillman, Block v. Maas,* and *Myers v. Conway, supra,* and which those decisions entirely overlook. It is a settled principle, declared in the old text books, and coming down to us without dissent or contrariety of opinion any where, that, when, in a grant or conveyance, complete and perfect in itself, of property well identified and described, there is embodied an *exception* from the grant of an uncertain and undefined part of the property conveyed, the *exception* is void for uncertainty and the grant is good. It is but the complement or resultant of the principle that a deed delivered must have effect, if possible, and its terms be taken most strongly against him who makes it.—1 Shep. Touch, 78; 4 Kent Com. 468; 2 Hilliard on Real Prop. 372; 3 Wash. Real Prop. 4th Ed. 431; Tiedman on Real Prop. 843; Devlin on Deeds, § 979, *et seq., Thayer v. Torrey,* 8 Vr. (N. J.) 339; *Ditman v. Clybourn,* 4 Ill. App. 542; *Rockafeller v. Arlington,* 91 Ill. 375; *Darling v. Crowell,* 6 N. H. 421; *Reidenger v. Cleveland M'g. Co.,* 39 Mich. 30; *Richardson v. Marqueze,* 59 Miss. 80; *Brooks v. Nichols,* 17 Mich. 38.

In 1 Shep. Touch, 77, an exception in a deed is thus defined, and its requisites stated: "An exception is a clause of

[Frank, et al. v. Myers, et al.]

a deed whereby the feoffer, donor, grantor, lessor, &c., doth except somewhat out of that which he had granted before by the deed." (And the note to the text adds, "And being the act and words of the feoffer, &c., shall therefore be taken against him strictly. 10 Co. 106, b.") "And this doth most commonly and properly succeed the setting down of things granted, and is made by one of these words, *except, practor, salvo, si non,* or such like. And hereby the thing excepted is exempted and doth not pass by the grant, neither is it parcel of the thing granted; as if a manor be granted excepting one acre thereof, thereby in judgment of law that acre is severed from the manor. But this may be in any part of the deed, and so hath it been resolved. In every good exception these things must always concur: 1. This exception must be by apt words. 2. It must be of part of the thing granted and not of some other thing. 3. It must be part of the thing only, and not of all, the greater part, or the effect of the thing granted. 4. It must be of such a thing as is severable from the thing which is granted and not of an inseparable incident. 5. It must be of such a thing as he that doth except may have and doth properly belong to him. 6. It must be of a particular out of a general thing and not of a particular out of a particular thing, or of a part of a certainty. 7. *It must be certainly described and set down.*" Then the author proceeds to give numerous illustrations of good and bad exceptions, under these several tests, among them: "If one grant all his horses, except his white horse, this is a good exception of the white horse;" and, "If one grant a house, excepting one chamber; or grant a manor, excepting one acre, but doth not set forth which chamber or which acre it shall be, these exceptions are void." Kent, Hilliard, Washburn, Tiedman and Devlin, and scores of adjudged cases cited by them, and the cases we have collated above, all recognize these rules as elementary and never questioned. We call attention, without quoting, to the very clear and forcible language in which the Supreme Court of Mississippi in *Richardson v. Marqueze, supra,* applied the doctrine to a general assignment for creditors almost identical with the one now before us. Chief Justice Cooley also, in *Brooks v. Nichols, supra,* substantially declared the principle, in construing an assignment like the present one.

It is most clearly to be seen that if there is any uncertainty in the Mullane assignment, it is in the description and identity of the goods attempted to be *excepted* from the grant by the clause in question and not in the grant itself. The grant itself is absolutely certain. It embraces all the prop-

[Frank, et al. v. Myers, et al.]

erty of the assignor.   Can it be held, therefore, without over-turning fundamental principles, that the grant is null and void, or does not pass the legal title, because, late in the deed, the assignor made an abortive effort to except some-thing from its operation?   The question needs no argument. It is too plain for controversy.   There is no conflict between this principle and the abstract rules laid down in *Block v. Maas, supra,* and *Myers v. Conway, supra.*   It is undeniably true that, if to complete a sale of goods, any thing remains to be done, the title does not pass until the thing is done; and likewise, that a sale of an unascertained part of a larger quantity or mass does not pass the title..   Neither of these is the case here.   Here nothing remained to be done to com-plete the transfer.   The deed itself, as we have seen, con-veyed the title to the whole, conceding the exception to be uncertain; and if that be not uncertain or repugnant, then the whole deed must needs be good from its inception.   Nor is it an effort to sell an unascertained part of a given whole, as in the case of ten out of eighteen tons of oil, cited in *Block v. Maas,* or 1,000 bundles out of all Cunningham's ties as in *Mobile Sav. Bank v. Fry, supra.*   In neither of these cases did the vendor sell a certain whole except an uncertain part, but attempted to sell an uncertain part of a certain whole. The uncertainty and infirmity which render inoperative a sale like these lie in the grant itself, and not in any uncertain ex-ception from the grant.

But, we do not think the clause in question, in Mullane's assignment is, in law, uncertain or repugnant or for any reason to be avoided, unless waived by the assignor by want of timely exercise of the right it reserves.   Considering our exemption laws, conferring a privilege upon the. debtor to select and claim by methods prescribed by law, under control of the courts when such control is invoked, so much property as exempt; and considering the situation of the parties at the time ; the immediate delivery of all the property to the assignee, and the objects they had in view, the practical and true interpretation of the clause, in question, is, that Mullane retained his right to select and claim his exemptions by some proper process, and in proper time, in the course of the ad-ministration of the trust, and have the same set off to him and excepted from the operation of the assignment.   The clause does not purport to be a perfect exception in itself, operative *eo instanti* on the execution of the deed, but con-templates a *future act* to be done by the assignor to give it operation.   It is in the nature, therefore, of a defeasance— a condition subsequent, so to speak—inoperative until the

right retained is exercised, but when exercised, operating to defeat the title of the assignee to the exempted goods. Judge Cooley takes this view of it, and cites the analogous cases of conveyances under bankrupt and insolvent laws, subject to a like right of selection; and he observes that in such cases, he is "not aware that any difficulty has been supposed to exist in the title of the assignee." He says: "He," the assignee, "succeeds to the rights of the bankrupt or insolvent, acquiring, however, so far as exempt property is concerned, a defeasible title which is divested when the selection is made. The trustee in a voluntary assignment, stands on the same footing and is entitled to the like protection."—*Brooks v. Nichols, supra.* See, also, *Rainwater v. Stevens, supra; Smith v. Mitchell,* 12 Mich. 180; and *Richardson v. Marqueze, supra.*

But there is another reason for which it is manifest the assignment passed the legal title to Myers. It was shown in *Myers v. Conway, supra,* and averred in the present bill, that immediate possession of the property was delivered to Myers by Mullane under and by virtue of the assignment. If it be conceded that the description of the property, as set forth in the instrument, was so insufficient that, by the terms of the deed, the title did not pass, the delivery of property, under the deed, as and for the property intended to be conveyed, cured the insufficiency. This is a well settled rule in reference to mortgages and conveyances of personal property where writing is not essential to pass the title.—*Parsons Sav. Bank v. Sargeant,* 20 Kan. 576; *Williamson v. Steele,* 3 Lea (Tenn.) 527; *Morrow v. Reed,* 30 Wis. 88; Burrell on Assign., § 282; *Faxon v. Durant,* 9 Met. (Mass.) 339; *Mead v. Phillips,* 1 Sand. Ch. 83. The delivery of the property was its absolute appropriation to the deed, and of itself ascertained the property intended to be conveyed, be the description in the deed itself never so defective. We apprehend, no one would contend that after such voluntary delivery upon the express trusts declared in the deed, the assignor could recover the property from the assignee until selection of his exemptions, and then only the property selected.

The Missouri Court of Appeals, in *Rainwater v. Stevens, supra,* gives another plausible ground for upholding such assignments, to which we merely refer without stating it.

We will not further enlarge the discussion. It is clear the cases of *Block v. Maas* and *Myers v. Conway, supra,* upon the point discussed, can not be sustained. We value the rule *stare decisis.* Decisions of our highest courts should not be lightly overruled; but when it is made manifest that

[Frank, et al. v. Myers, et al.]

a controlling principle in a cause escaped the consideration of counsel and the court, resulting in a decision opposed to settled law, we conceive it our duty to re-establish the law upon its proper basis.

The result of this conclusion is, that the attachment levies upon the goods were trespasses upon the possession of the assignee which it was his duty to redress by some appropriate remedy. He pursued a course marked out by law; prosecuted his claims, we assume, in good faith and with due diligence, and met with the adverse judgments of the court. By those judgments the right of appellees, attaching creditors, to condemn the goods was conclusively ascertained, and the assignee became conclusively bound to pay the assessed value of the goods and costs. His title being legal, he had his full day in court, and has no equity to retry the issues now, in a court of equity; and the beneficiaries in the trust have none. The judgments, in the absence of collusion, conclude him and them, whom he represents, alike. The appellees will not be restrained in enforcing their judgments, and the assignee will be protected against the claims of other creditors, to the extent of the liability, fixed by the judgments, upon the property levied upon. There is, therefore, no equity in the bill as against the appellees.

But the defendants, J. J. Callaghan and J. A. Mullane, have not appeared. Against them, the bill alleges a distinct special equity, which, if supported by other necessary allegations omitted from the present bill, may take them without the influence of the conclusiveness we have accorded to the judgments of the appellees, and give complainants a standing in court against them. The bill, in effect, avers that they obtained their judgments of condemnation and statutory executions against the assignee upon simulated claims against M. J. Mullane, the insolvent; and received from the assignee assets of the trust estate in payment of such claims; and it is prayed that they be decreed to refund the assets so fraudulently received, by payment into court for the purposes of the trust. As we have said, these defendants have not appeared, and hence, no issue of law or fact has been formed upon these averments. Complainants were entitled to have the bill retained in court for such issue. Its dismissal, however, was absolute as to all the parties, and therein the City Court erred. The decree is reversed, and a decree will be here entered dismissing the bill for want of equity, as against all the defendants, except Demetrius F. Myers, J. J. Callaghan, J. A. Mullane, Michael J. Mullane and First National

[Cotton v. Scott.]

Bank of Birmingham; and as to them the cause will be re-manded.

We notice confusion in the bill on one point. It is loosely, indeed, only inferentially, shown that Callaghan and J. A. Mullane received payment of their demands; and yet the bill avers that they, with the other attaching creditors, are proceeding to condemn the funds in bank by garnishment. The bill should be put in better shape upon this point. The First National Bank may or may not be a proper party in the further progress of the cause according to the facts. The appellees having moved for and procured an absolute dismissal of the bill as to all the parties, let them pay the costs of the appeal.

Reversed, rendered in part and remanded.