# Jaffray *et al.* v. Smith *et al.*

## Bill *in* Equity *to enjoin* Sale *under* Execution.

1. *Sureties on claim bond; agreement that judgment in one of similar suits shall be the judgment in the other, does not amount to a release.*— Where, upon the levy of several writs of attachments, a claim is interposed under the statute to the property so levied upon, and claim suits thus instituted are pending in the same court and each of them present precisely the same issue on the record, and the determination of these identical issues is dependent upon the same evidence in each case, an agreement, made in good faith and without collusion, prejudicial to parties incidentally or ultimately interested, between the plaintiffs in each of the attachment suits and the claimant, that the verdict and judgment in one of the suits to be actually tried shall be the verdict and judgment in all, will not result in the release or discharge of the sureties on the claim bond in each of said suits notwithstanding the fact that the sureties were not parties to said agreement and did not consent thereto ; and a judgment in the suit actually tried that the property, as against the claimant, was subject to the demands of the plaintiff is a valid adjudication in each of the other suits, that the property taken under the claim bond was subject to the demands of the plaintiffs in each of the attachment suits, within the terms of the conditions of the claim bond, rendering the sureties on said bonds liable upon the forfeiture of said bonds.

2. *Same; agreement as to assessment of the value of the property levied upon.*—In such cases, where the property levied upon is a stock of merchandise, and it is impracticable to assess the value of each article separately, an agreement between the claimant and the plaintiff in each of the attachments that the value of the property at the time of the trial should be assessed at the sum shown by the inventory taken some time before, and for which sum it had, in the meantime, been sold by the claimant, is such an agreement as the claimant had a right to make, and the assessment of value according to its terms does not release the sureties on the claim bond.

3. *Same; form of judgment.*—Where a claim is interposed to property on which a judgment has been levied, and the undertaking in the claim bond is to "have the property forthcoming for the satisfaction of the attachment if it be found liable therefor," meaning the judgment for plaintiffs in attachment, the judgment in the claim suit should declare the property subject to the levy of the attachment, and that it be condemned to the satisfaction of the judgment if one is obtained ; but when judgment has not been rendered in the attachment suits, it is proper and sufficient to find and adjudge that the

[Jaffray *et al.* v. Smith *et al.*]

property was liable to the attachment, and a judgment in the claim suit condemning the property held by the claimant "to the satisfaction of the attachment," will not absolve the sureties on the claim bond from responsibility.

4. *Forfeited claim bond; amount of judgment and execution thereon; equitable relief to sureties against judgment.*—Where, upon the levy of an attachment a claim is interposed to the property so levied upon and a bond is given as required by law, and the claim suit thus instituted is decided against the claimant, and the bond is returned for-forfeited, the execution against the sureties on the bond is limited to the value of the property as assessed in the claim suit, notwithstanding the judgment in the attachment suit may be for a greater amount; and where several attachments in favor of different plaintiffs have been levied successively on the same stock of goods, and a claim interposed in each case by the same person, with the same sureties on the claim bond, and the claim suits are decided against the claimant, and the aggregate of the debts of the several attaching creditors, as reduced to judgment, is largely in excess of the value of the property as assessed in the claim suit, if upon the return of the claim bond as forfeited, the executions issued thereon severally against the sureties are for the full amount of the judgment in each of the attachment suits, thus aggregating largely more than the value of the property, for the return of which the claim bonds had been given, the sureties on said bonds can maintain a bill in equity to adjust the priorities of the judgment creditors and to settle their liability in the several cases.

5. *Same.*—In such a suit the complainants must do equity; and the final decree of the chancellor should enforce the payment by the sureties of the value of the property as assessed in the claim suits, less the necessary expenses in selling and such amounts as may have been paid by the claimants, to parties entitled thereto.

6. *Sureties on claim bond; when liable for amount paid by claimant to insolvent debtor as exemptions.*—When in a statutory trial of the right of property levied upon under writs of attachment issued in several suits by attaching creditors, it is determined that the claimant who replevied the goods from the sheriff and sold them during the progress of the suit, had no title to the goods, a sum which such claimant paid to the insolvent debtor (the defendant in the attachment suit) as the amount allowed by law as his exemptions, cannot be be taken into account in fixing the amount for which the sureties on the claim bond are liable; and the sum thus paid by the claimant must be paid by the sureties on the claim bond to the attaching creditors according to their priorities.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. THOMAS COBBS.
The bill in this case was filed on August 12, 1890, by

8.

[Jaffray *et al.* v. Smith *et al.*]

M. T. Smith, Daniel Brennan, George S. O'Bear, Jr.,
E. Eastman and John M. Thompson, the appellees in
this court, against the individual members of the firm of
E. S. Jaffray & Co., Sylvester, Hilton & Co., Sweetser,
Pembrook & Co., The Troy Manufacturing Co., J. B.
Lewis, J. M. Conway & Co., and certain attorneys at
Birmingham, Alabama, as representatives of the defend-
ant firms, and D. F. Myers. By amendment the attor-
neys were stricken out as parties defendant. As amend-
ed, the bill averred the following facts : On November
22, 1887, M. J. Mullane, doing business under the firm
name of Mullane & Company made and executed a deed
of assignment to D. F. Myers for the benefit of all of his
creditors, and the said Myers accepted the trust under
the deed. In this deed there was this provision : "But
the party of the first part [Mullane], in making this as-
signment reserves to himself any and all exemptions to
which he is entitled under the laws of this State." The
bill then avers that the deed of assignment was properly
executed and duly filed in the office of probate ; that be-
fore the execution of this deed of assignment, J. A.
Mullane sued out a writ of attachment against M. J.
Mullane for $3,400, and J. J. Callaghan sued out a writ
of attachment against M. J. Mullane for $4,600, and that
these attachments were levied upon the stock of goods,
and when the assignee went to take possession of said
goods, which were conveyed in the deed of assignment,
he found them in the hands of the sheriff who had levied
the said attachments ; that after the levy of the Mullane
and Callaghan attachments, and execution of the deed
of assignment, attachments were sued out on the next
and succeeding days by the respondents to this bill.
Each of the attachments sued out by said respondents
was levied upon the same stock of goods, and in execut-
ing the levies the sheriff recited that each attachment
was subject to the levy of each and every preceding at-
tachment. Myers, as assignee, made affidavit and exe-
cuted a claim bond to the property upon which the
attachments of J. A. Mullane and J. J. Callaghan were
levied, but the sheriff refused to deliver the said prop-
erty, or any part thereof to said Myers, unless he would
make similar affidavits and give similar bonds as to all
the other attachment suits. Thereupon Myers made ad-
ditional affidavits and bonds, with reference to the attach-

ments sued out by the respondents to this suit, with the complainants to this suit as sureties thereon. These bonds were made payable as provided by law; and the property was turned over to Myers. After taking possession of the property under the claim bond, Myers sold the property for $16,108.38, and out of the proceeds thereof paid the rent and other necessary expenses, and also paid to M. J. Mullane, the grantor in the deed of assignment, $1,000 as his exemption. J. A. Mullane and J. J. Callaghan recovered a judgment in their attachment suits against M. J. Mullane for $5,000 and $4,000, respectively, and Myers paid these judgments out of the proceeds of the sale of goods. On February 14, 1889, by an agreement between the plaintiffs in the other attachment suits, in which the writs of attachment were levied after the execution of the deed of assignment, and the claimant in such suits, the case in which Conway & Company were plaintiffs was tried, with the understanding that the same judgment rendered in that case should be entered in each of the other five cases, it being further understood and agreed between the parties, that the value of the property which was levied on under the attachments should be fixed at $16,108.38. On the trial of the case of Conway & Company there were verdict and judgment against the claimant. In accordance with the agreement which had previously been entered into by the plaintiffs in attachment and the claimant, like judgments were entered in all the other attachment suits; and the value of the property was not assessed by the jury in reference to each particular article, but was assessed in bulk in accordance with the said agreement; the whole value of the property being fixed at $16,108.38. In accordance with the several verdicts in each of the attachment suits, the judgment in each suit condemned the property held by the claimant to "the satisfaction of the attachment" in each suit. Judgment was rendered in favor of each of the plaintiffs in the several attachment suits, for the value of the amount of their respective claims. The claimant failing to return the property within 30 days after the rendition of these several judgments, the bonds were returned by the sheriff as forfeited, and separate executions were issued in favor of each of the plaintiffs

[Jaffray *et al.* v. Smith *et al.*]

in the several attachment suits against D. F. Myers, as claimant, and the complainants in the present bill as his sureties.    D. F. Myers, the claimant, was insolvent, having no property amenable to execution, and these executions were, therefore, levied by the sheriff upon the property of the complainants; and  such property was about to be sold for the satisfaction of the several judgments.    It was further averred in the bill that in the said attachment suits, the property ' had not been found liable  to  the  satisfaction of, any of the judgments except in the suit by Conway  &  Co.; and that, therefore, the forfeiture of the claim bond, upon which the complainants were sureties, and the executions issued thereon were unauthorized  by law, and.contrary to the terms and conditions of said bond ; and that the agreement as to the trial of the attachment and claim suits and the value of the said property was made and entered into without the knowledge or consent of the complainants.

The prayer of the bill was that the court should decide whether the deed of assignment was valid in equity ; whether or not any lien was thereby created upon the property conveyed therein, superior to the lien created by the levy  of the attachments; whether or not the complainants are responsible for any, and how much, of the proceeds of said property ; whether or not they are liable to pay the attachment creditors any,  and what, sum of money on account of their respective claims, and  the bond, executions and proceedings therein ; and that the attaching creditors,  their assignees and attorneys, may be restrained from selling any of the property upon which the executions have been levied, or any other property of the complainants or either of them ; and that any sale of the said property, which may have been made under said executions be set aside and annulled.

The respondents in their several answers admitted the levy of the attachments by J. A. Mullane and J. J. Callaghan, the making of the deed of assignment by M. J. Mullane, with D. F. Myers as assignee ;  the acceptance of the trust by the assignee, and  the suing out and levy of the several writs of attachment in favor of the respondents ; the agreement between the plaintiffs in the several attachment suits and the claimant for the judgment in one of the cases to determine the judgment in all ; the trial in the Conway case, the rendition of judgment in

[*Jaffray et al.* v. Smith *et al.*]

favor of the plaintiffs in that case, and the entering of similar judgments in favor of the plaintiffs in the other attachment suits. They further averred in their answers that each one of these several attachment suits involved the identical questions, and were to be tried upon the same facts, and that the agreement was made for the purpose of saving expense and time in the trial of the several cases. They denied that the alleged indebtedness of M. J. Mullane to J. A. Mullane and J. J. Callaghan was *bona fide*, but alleged that it was simulated and fictitious, and that the suits by them were not defended by the claimant, and that judgment was entered as by previous agreement between them and the claimant and the assignor, for the purpose of hindering and delaying the creditors of the assignor; they denied that the value of the property assigned was only $16,108.38, and alleged that it was greatly more than that amount. They further alleged in their answers that the claimant had no right to pay to M. J. Mullane, the assignor, the $1,000, claimed by him as his exemptions; and that the payment by Myers to J. A. Mullane and J. J. Callaghan the amount of the judgments recovered by them was unauthorized, and should not be taken into account in the settlement of the trust by the assignee. The respondents asked that their several answers be taken as cross bills, and that the complainants be required by decree of the court to pay the amount of the several judgments in favor of each of them, together with interest and costs thereon.

The evidence of the complainants and the defendants tended to sustain their respective claims, as shown by the bill and answers, respectively.

On the final submission of the cause, on the pleadings and proof, the chancellor decreed that the complainants were entitled to the relief prayed for, and ordered that they be discharged from all liability for and on account of the several claim bonds in which they were sureties of D. F. Myers, the claimant, against which relief was asked. It was further ordered and decreed that each of the cross bills be dismissed as to complainants. Respondents appeal, and assign as error this decree of the chancellor.

MOUNTJOY & TOMLINSON, GARRETT & UNDERWOOD and

Bush & Brown, for appellants.—The obligation of a
surety is voluntary. He is to receive no benefit. He
enters into this relation for accommodation of his prin-
cipal; hence the courts strictly construe the contract of
suretyship in favor of the surety. His contract can not
be changed without his consent. He has a right to stand
upon the very terms of his contract, "and if a variation
is made which extends its liability to another person, or
to any other subject, or for any other period of time than
such as may be included in its words," and he does not
assent to it, such variation is fatal to his obligation,
whether he is injured thereby or not.—*Anderson v. Bel-
lenger*, 87 Ala. 336; *Johnson v. Flint*, 34 Ala. 673; *Mac-
kay v. Dodge*, 5 Ala. 388.

The undertaking of a surety is accessorial to that of
his principal, and if the principal admits the contract to
to be binding on him, it is binding on his surety, unless
there be a fraud or collusion between debtor and creditor
to charge surety.—*Fletcher v. Gamble*, 3 Ala. 335; *Evans
& Arrington v. Keeland*, 9 Ala. 42; *Siddall v. Goggan*, 5 S.
W. Rep. 668; *Howell v. Milling Co.*, 38 Amer. St. Rep.
694.

Value of each article should be assessed at the time of
trial, as far as practicable. If not practicable, law does
not require it.—Code of 1886, § 3007; *Madden v. Hooper*,
42 Ala. 397.

When property is levied on by attachment, judgment
in the claim suit should declare "the property subject to
the levy of attachment, and that it be condemned to the
satisfaction of the judgment, if one is obtained."—*Town-
send v. Brooks*, 76 Ala. 308.

Where a stock of goods is levied on by three successive
attachments, aggregating more than the value of goods,
and claim bonds are given, the sureties are liable to at-
taching creditors to the value of stock of goods.—*Maas
v. Long*, 70 Ala. 237.

Brooks & Brooks and J. M. Martin, *contra.*—It is
well settled that a surety has the right to stand upon
the precise terms of his contract; and that any alteration
made, without his consent, in the terms of the original
agreement or mode of performance, will exonerate him
from all liability.—*Mackay v. Dodge*, 5 Ala. 388; *John-
son v. Flint*, 34 Ala. 673; *Watson v. Simmons*, 91 Ala.

567 ; *Moses Bros. v. Home B. & L. Asso.*, 100 Ala. 465.

The condition of the replevy bond—that the property be forthcoming "for the satisfaction of the judgment, if it be found liable therefor," involves, as a necessary incident, that a jury must subject the property to the payment of the process levied ; and they must, as far as practicable, assess the value, at the time of the trial, (as the law was when this case was tried, or at the time of the levy, as the law now provides), of each article separately.—Code of 1886, §§ 3004, 3008, 3012, 3013 ; *Roswald v. Hobbie*, 85 Ala. 73. There is, also, involved another incident ; that the sureties' contract be prosecuted in the mode, and by the performance of the stipulated acts in the statute specified, in trials of the right of property—the failure to do so would prove fatal, and discharge them.—*Johnson v. Flint*, 34 Ala. 673 ; *Gayle v. Bancroft*, 17 Ala. 351 ; *Jones v. Anderson*, 76 Ala. 428 ; *Henry & Co. v. Powell*, 90 Ala. 440.

When an attachment has been levied upon personal property, and the same has been replevied by a claimant, it is in the custody of the law, and not liable to seizure under any other attachment against the same debtor.—*Rives v. Wilborne*, 6 Ala. 45 ; *Kemp v. Porter*, 7 Ala. 138. But the levy of other attachments would place the property without the control of the sureties ; *Watson v. Simmons*, 91 Ala. 568 ; and render invalid a return of forfeiture by the levying officer.—*Bolling & Son v. Vandiver & Co.*, 91 Ala. 379. Such second levy would discharge the sureties.—*Cordaman v. Malone*, 63 Ala. 556 ; *Scarborough v. Malone*, 67 Ala. 570.

If the several claim bonds were valid statutory bonds when given, and if each bond was executed with reference to the attachment and the levies endorsed thereon ; the rights of each attaching creditor would be in subordination to the lien of every other prior attachment and levy upon the same property ; hence to hold the sureties liable in each case for the gross value of the entire property, unconditionally, would be contrary to the very terms of each levy, and the true intent and meaning of the bonds.

McCLELLAN, J.—The claim, which was sustained by the chancery court, that the sureties on the several claim bonds given by D. F. Myers, assignee &c., were dis-

charged from all liability thereon, is rested upon three distinct grounds : *First*, that the agreement of counsel representing the several attaching creditors and D. F. Myers, assignee and claimant, by which the result of each of the suits was made to depend upon and follow the issue of the one of them which only was actually tried, was an authorized modification of the contract of suretyship, and therefore discharged the sureties ; *second*, that the condemnation of the property in each case was to "the satisfaction of the attachment," and not to "the satisfaction of the judgment" against the defendant in the attachment as stipulated in the bonds ; and, *third*, that the value of the property was assessed by the jury under and in accordance with another agreement between the claimant and the plaintiffs in the several attachments, and further that this assessment was in bulk and not of each article of the property.

1. In respect of the first of these grounds, it is to be observed in the outset that the facts averred, strickly speaking, do not present an inquiry whether there was an unauthorized change by subsequent agreement between the plaintiffs and the claimant of the complainants' contract of suretyship, but, if these facts involve any invalidating consequences to the bonds, it is by way of showing that the contingency upon which the sureties' obligation was to become absolute has not transpired. That contingency was the finding by the court in the claim suits that the property as against the claimant was subject to the demands of the plaintiffs against Mullane, and the real position of the sureties is, not that any stipulation of their undertaking has been altered in any respect, but that there has not been that finding of the superiority of the plaintiffs' claim to the property over that of their principal, Myers, upon which alone the liability from which they now seek to escape became fastened upon them. In determining the question, it is to be constantly borne in mind that Myers alone, on that side of the controversy, was a party to the record in each of the cases. Upon him devolved the duty and in him was the right to conduct and control the litigation to a final conclusion. And in this conduct and control of the claim suits, it was not only his right, but in a sense his duty, to make all such agreements as are usual and customary between parties to causes pending in the courts,

as to the course of proceeding; and the only limitations upon the exercise of this right and power in cases like this are that the agreements shall be made in good faith and without collusion prejudicial to parties incidentally or ultimately interested, and that thereby a fair and impartial finding and adjudication of the fact upon which the liability of the sureties depends shall not be precluded or endangered. Here all the claim suits were pending in the same tribunal, and each of them presented precisely the same issues on the record, and the determination of these identical issues depended upon precisely the same evidence in each case. That one which was actually tried was decided upon a question of law which was common to all of them. Under such circumstances it is usual and customary for parties to agree to try all the cases together, or, which is essentially the same thing, that the verdict and judgment in one actually submitted to the jury shall be the verdict and judgment in all. Such agreements save the time of courts and much trouble, time and costs to the parties, and may well be of great benefit to persons only indirectly and ultimately liable as are the sureties upon claim bonds. If each of these cases had been separately tried, there was no possibility from the standpoint of the agreement, and is none from any point of view, that the finding and judgment in any one of the cases would be or could have been at all different from the finding and judgment which was entered upon in each one of them by virtue of the agreement that the trial of one should settle all the cases, except that the cost bills against these complainants in the causes determined according to the agreement would have been greater. Upon the foregoing considerations, we are clear to the conclusion that, so far as this point goes, there was a regular and valid finding and adjudication that the property taken under the claim bonds was subject to the demands of the plaintiffs in each of the several attachment suits within the terms of the conditions of those bonds, and the obligors therein were not discharged by reason of the course of proceeding by which the finding and judgment were reached and rendered,

2. The further agreement as to assessment of the value of the property stands upon the same footing. In such cases, the property consisting of a large stock of

merchandise, it is impracticable, and hence not essential, to assess the value of each article separately—Code, § 3007. And the agreement between the claimant and the plaintiffs in each of the attachments that the value of the property *at the time of the trial*, for that is the effect of it, should be assessed at the sum shown by the inventory taken some time before, and for which sum it had in the meantime been sold by the claimant, was such agreement as the claimant had a right to make, and the execution of it—the assessment of value according to its terms—did not release the sureties ; nor do these facts at all militate against the conclusion we have reached that the property was found subject to each and all the attachments within the terms and contemplation of the condition upon which the bonds were executed. The agreement was not collusive or otherwise fraudulent. It was such agreement as is usual and customary in proceedings of this sort under like circumstances. The claimant had a right to make it, and neither the fact of its being entered into nor of its effectuation can avail these complainants.

3. There is nothing in the position advanced by the sureties that the form of the judgments in the claim suits absolves them from responsibility on the several bonds. It is true the undertaking in each of the bonds is to "have the property forthcoming for the satisfaction of the judgment if it be found liable therefor," meaning the judgment for plaintiffs in attachment, and the condemnation is to liability to the "plaintiffs' attachment" ; but judgment not having been rendered in the attachment suits, it was, we think, proper and sufficient to find and adjudge that the property was liable to the attachment. From this necessarily followed the subjection of the property to the judgment in attachment if and when it should be rendered.—*Townsend v. Brooks*, 76 Ala. 308.

4. The several attachments against Mullane were levied at different times on said stock of goods, the whole of which was taken into the sheriff's possession under the first writ levied, and each successive levy was expressly made subject to all the attachments which had been previously levied. The aggregate of debts of the several attaching creditors of Mullane as reduced to judgments was largely in excess of the value of the property as as-

sessessed in the claim suits, but, notwithstanding this fact, on the failure of the claimant to return the property to the sheriff and the endorsement of that fact on the several claim bonds, executions issued thereon severally against the sureties for the full amount of the judgment against Mullane in each case, thus aggregating largely more than the value of the property for the return of which the bonds had been given. That these complainants have a standing in a court of chancery for relief against this manifest injustice has been expressly decided by this court, and on the facts averred in it, and which we have summarized here, the present bill contains equity to that end.—*Maas & Block v. Long*, 70 Ala. 237, 243.

5. Seeking this relief the complainants must do equity, and the final decree below should enforce the payment by them of the value of the property found in the claim suits, less such reasonable and necessary expenses incurred and paid by the claimant in selling the property as the sheriff would have incurred and paid had the claims not been interposed, and less also, of course, the amounts that have been paid by Myers to the sheriff and to attaching creditors entitled thereto.

6. The sum paid by Myers to Mullane under the latter's claim of exemption can not be taken into account. It was adjudged in the claim suits that Myers had no title to the goods, and those judgments, standing unreversed—affirmed in fact—by this court, forever foreclose that inquiry and settle the invalidity of his claim, and this though it was subsequently held by this court in a collateral proceeding that both the lower court and this erred in the rendition and affirmance, respectively, of said judgments.—*Myers v. Conway*, 90 Ala. 109; *Frank v. Myers*, 97 Ala. 437. So that Myers must now be considered the merest stranger wrongfully intermeddling with property which the attaching creditors had a right to subject to their demands and by such intermeddling to have allowed Mullane to take a thousand dollars of the proceeds thereof under color of his right of exemption, when the property was under rightful attachment without any claim of exemption being made to the proper person—the sheriff— and, of consequence, without any opportunity being afforded the plaintiffs in the attachments to contest such claim. The sum thus paid by

Myers to Mullane must now be paid by the complainants to the attaching creditors according to their priorities. Payments made by Myers to the plaintiffs in the two attachments first levied on the property, J. A. Mullane and Callaghan, should be credited in favor of the complainants in stating the account against them. The insistence of appellees that the alleged debts of these creditors were simulated and that their attachments were collusive and fraudulent is not sustained by the record before us.

Reversed and remanded.